A95A2482. CENTURY 21 PINETREE PROPERTIES, INC.
v. CASON et al.
(469 SE2d 458)

JOHNSON, Judge.

John and Melinda Cason signed a contract to purchase a house from David Govus for $575,000. The sale of the house, however, was not consummated. Century 21 Pinetree Properties, Inc., Govus's broker, sued the Casons to recover its entire $46,000 broker's commission, based on the contract term providing that the Casons agree to pay the full commission if they fail or refuse to perform any of the buyers' covenants in the contract. The Casons answered the lawsuit and moved for summary judgment on various grounds. Century 21 filed a cross-motion for summary judgment. The trial court granted the Casons' motion, but did not specify the reasons for that ruling and did not expressly rule on Century 21's cross-motion for summary judgment. Century 21 appeals from the grant of summary judgment to the Casons.

1. Century 21 argues that the court, in ruling on the Casons' motion, erroneously struck and refused to consider the affidavit of Melinda Cason in which she stated, in material part, that she wanted to buy the property, but her husband did not want to buy it because they were having marital problems and because of the distance they would have to travel to maintain the property. Contrary to Century 21's argument, the trial court did not err in ruling that these material portions of the affidavit are protected by the marital communications privilege. See OCGA § 24-9-21 (1). "Subject to certain limited exceptions, the general rule in Georgia is that a privilege inures to the communicator for all communications made to a spouse for all consensual marital acts of a personal nature involving married persons, where the communication or act results from a reliance upon the confidential relationship of husband and wife. [Cits.]" *White v. State*, 211 Ga. App. 694, 695 (3) (440 SE2d 68) (1994). Here, John Cason's alleged communications to his wife about his personal reasons for not wanting to purchase the house were made in the confines of the confidential marriage relationship and were thus privileged. Accordingly, the trial court correctly refused to consider those communications.

2. Century 21 asserts that the court erred in granting the Casons'

motion for summary judgment. We agree because none of the grounds for summary judgment advanced by the Casons proves that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. See OCGA § 9-11-56 (c).

(a) The Casons contend that it is undisputed that Century 21 is not an assenting party to the contract and has no standing to enforce any of the contract provisions because it did not sign the contract. This contention is without merit. Clearly, the *best* way for Century 21 to have indicated its assent to the terms of the written contract would have been to sign the document. It fails to execute the written agreement at the risk of raising a defense such as the Casons raise here, creating confusion where it could easily have been avoided. Century 21's failure to sign, however, is not necessarily fatal to its claims as the Casons suggest. "Assent to the terms of a contract may be given other than by signatures." *Cochran v. Eason*, 227 Ga. 316, 318 (1) (180 SE2d 702) (1971); *Rogin v. Dimensions South Realty Corp.*, 153 Ga. App. 75, 77 (264 SE2d 555) (1980). Evidence in the instant case shows that Century 21 acted as the broker in this deal; that Century 21 drafted the contract; that the contract expressly provides, "[i]n negotiating this contract, Broker has rendered a valuable service for which reason Broker is made a party to enable Broker to enforce his commission rights hereunder against the parties hereto"; that Century 21's name and address, along with the names of two Century 21 salespeople who worked on this deal, are all typed on the contract's signature page; and that Century 21 has made solemn in judicio admissions that it is a party to the contract. All of these factors create genuine issues of material fact as to whether Century 21 is a party to the contract even though it did not sign the document. See *Puppy Love Kennel v. Norton*, 158 Ga. App. 69, 70 (279 SE2d 312) (1981); *Clyde Chester Realty Co. v. Stansell*, 151 Ga. App. 357, 358 (1) (B) (259 SE2d 639) (1979). The Casons therefore are not entitled to summary judgment based on their claim that Century 21 did not assent to the contract terms.

(b) The Casons argue that because Century 21 acted as Govus's broker, it cannot recover the commission from them. This claim is specious in light of the plain contract language providing that the Casons agree to pay Century 21's full commission if they fail or refuse to perform under the contract. We have upheld such real estate contracts in which the breaching buyer agrees to pay the broker's commission. See *Stover & Sons v. Harry Norman, Inc.*, 187 Ga. App. 514, 515 (1) (370 SE2d 776) (1988); *Clark v. Cox*, 179 Ga. App. 437, 438 (2) (347 SE2d 4) (1986). "[I]t is general contract law . . . that parties are free to contract about any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears." (Citations and punctuation omitted.) *McCoy v.*

*H. N. R. Investment Group*, 210 Ga. App. 645, 646 (2) (437 SE2d 355) (1993). The Casons cannot avoid the legal contract term which they freely agreed to by now claiming that Century 21 acted only on Govus's behalf.

(c) The Casons argue that Century 21 has no basis upon which to sue them because no valid contract was actually formed between them and Govus. The contract provides that it shall be regarded as an offer by either the buyer or seller, whoever first signs it, and such offer is open for written acceptance by the other party until noon on August 23, 1993. Immediately after this provision, the contract states: "THE ABOVE PROPOSITION IS HEREBY ACCEPTED AT 7:00 O'CLOCK P.M., THIS 25th DAY OF August, 1993." The signatures of Govus and the Casons appear just below this written acceptance. Although these signatures are not dated, the next page of the contract sets forth additional contract stipulations which were initialed by Govus on August 18, 1993, and initialed by the Casons on August 25, 1993. Based on these dated initials, the Casons assert that Govus signed the contract first, and was thus the offeror whose offer was open only until August 23, and that they did not sign the contract and accept the offer until August 25, after the offer had expired by its terms. Due to their untimely acceptance, the Casons reason, no contract was actually formed and they are entitled to summary judgment.

We disagree because even if we assume that Govus was the offeror and his offer was not accepted until after it had expired on August 23, there remain genuine issues of material fact as to whether a valid contract was nevertheless formed. If a contract requires that an offer be accepted within a stated time, no contract is formed when the offer is accepted after the stated time, unless the late acceptance became a counteroffer which was then accepted by the original offeror. *Achour v. Belk & Co.*, 148 Ga. App. 306, 307 (251 SE2d 157) (1978). In the instant case, there are, at the very least, genuine issues of material fact as to whether the Casons' late acceptance of Govus's offer became a counteroffer which was in turn accepted by Govus. Accordingly, the Casons' claim that they are entitled to summary judgment because no valid contract was formed is without merit.

(d) The Casons contend that they are entitled to summary judgment because they did not breach the contract; rather, the sale was not consummated due to Govus's failure to perform a material condition precedent to the contract. The condition in question states: "Contract shall be contingent upon Seller obtaining from Cherokee Federal Savings Bank written confirmation that his present loan to such Bank will not be accelerated upon sale of subject property, and that such Bank will consent for the owner financing to Purchasers to contain 'wrap-around' provisions of the current debt from Seller to

Bank." The Casons claim that this contingency was not met because they never received the written confirmation from the bank. On the other hand, Century 21 argues that this contract condition requires only that Govus obtain the written confirmation from the bank, and does not require that he give a copy of that written confirmation to the Casons. Century 21 further claims that because Govus obtained the required confirmation in writing from the bank, the contract condition has been satisfied.

There are three steps in contract construction: the trial court must first decide whether the contract language is ambiguous; if it is ambiguous, the trial court must then apply the applicable rules of construction; and if an ambiguity still remains, the jury must then resolve the ambiguity. *Gram Corp. v. Wilkinson*, 210 Ga. App. 680, 681 (1) (437 SE2d 341) (1993). Here, the contract provision in question is ambiguous in that it does not clarify whether the bank's written confirmation must be provided to the Casons or whether the only requirement is that Govus obtain the written confirmation. Based on the record as it now stands before us, the ambiguity cannot be resolved as a matter of law by the court applying the rules of contract construction. "The cardinal rule of construction is to ascertain the intention of the parties." OCGA § 13-2-3. Here, the parties' intention cannot be definitively ascertained. The Casons state that they insisted on this stipulation for their own protection, but Century 21 asserts that the stipulation protected only Govus by ensuring that the bank would not accelerate his outstanding loan so that after being paid at the closing he would have available cash. The evidence on this point is conflicting. The conflicting evidence as to whom the parties intended to be the beneficiary of this contract stipulation is material because, if the provision was meant only to protect Govus, then Century 21's claim that the Casons are not entitled to the written bank confirmation is reasonable. But if the provision was meant for the Casons' benefit, then they are correct in asserting that the only logical construction of the stipulation is that it requires that they too receive the written confirmation. Because this ambiguous contract provision, as the record now stands, presents a genuine issue of material fact, the Casons are not entitled to judgment as a matter of law.

(e) The Casons' final basis for seeking summary judgment is that the contract provision requiring them to pay Century 21's commission is not a valid liquidated damages provision, but is an unenforceable penalty. The Casons' argument is misplaced because the payment of the commission is neither a penalty, nor liquidated damages. According to the contract, Century 21 rendered a valuable service by negotiating the agreement and it is entitled to be paid for that service, regardless of whether the sale is actually consummated. Thus, Century 21's recovery is for services it performed in connection with negotiat-

ing the contract. See *Stover & Sons*, supra. By signing the contract, the Casons acknowledge that Century 21 is entitled to its commission. Because payment by the Casons is not a penalty nor damages, but is simply Century 21's collection of its commission for services already rendered, the Casons' claim for summary judgment is without merit. See generally *Rybos v. St. Mary's Hosp.*, 195 Ga. App. 474, 475 (2) (393 SE2d 739) (1990).

*Judgment reversed. Birdsong, P. J., and Smith, J., concur.*

DECIDED FEBRUARY 27, 1996.

*William L. Reilly*, for appellant.
*Sims, Fleming & Spurlin, John C. Spurlin, Walters, Davis & Pujadas, J. Harvey Davis*, for appellees.