A99A0253. LOSTOCCO v. D'ERAMO.
(518 SE2d 690)

ELDRIDGE, Judge.

Alexander Lostocco, plaintiff-appellant, and Anthony P. D'Eramo, defendant-appellee, formed as stockholders and investors a corporation, Performance Leasing, Inc. ("PLI"), and plaintiff operated it in Atlanta. Such day-to-day operations by the plaintiff included all accounting. Defendant lived in Cincinnati and had no involvement with the management or day-to-day operations of PLI. Defendant believed that the plaintiff was utilizing PLI for his individual interests rather than the company's interests. Therefore, early in 1987, defendant took over PLI to liquidate it. Defendant shipped PLI's books and records to Cincinnati. On May 31, 1988, plaintiff filed suit against the defendant for taking over the company.

On May 31, 1988, to settle the suit the parties entered into a written settlement agreement in which plaintiff transferred all of his stock in PLI to defendant. The defendant, in consideration, agreed to indemnify plaintiff from federal taxes arising from PLI. Under the agreement, defendant "shall pay and hereby agrees to indemnify [plaintiff], and each of them, from and against any liability for federal taxes arising out of PLI and its operations. There is no agreement between the parties with respect to any state withholding taxes, and the parties' respective rights or liabilities concerning any state withholding taxes shall be unaffected by this settlement agreement or the releases or covenants contained herein."

Beginning in 1987, the IRS began an audit of PLI, focusing on

the trust fund taxes. Plaintiff alleged that neither PLI nor defendant paid federal employees' withholding trust fund taxes totalling $18,917.53 for federal income, FICA, and Medicare for the quarters ending December 31, 1986 and March 31, 1987. In October 1987, PLI filed its withholding tax return for the first quarter of 1987 without paying the taxes due. In June 1991, the IRS gave notice of its intent to levy such taxes against the corporate officers, plaintiff and defendant, for failure to pay such trust fund taxes. As of February 23, 1991, the interest and taxes were $22,721.71. To stop the running of interest, plaintiff paid the IRS $22,790.28.

The IRS levied upon plaintiff's bank account to collect the trust fund taxes due. Plaintiff demanded indemnification under the agreement for the taxes paid, but defendant refused to indemnify what he contended were federal penalties.

In September 1991, plaintiff sued defendant for breach of contract. Defendant answered and raised several affirmative defenses. Plaintiff moved for summary judgment. Defendant responded and filed his own cross motion for summary judgment. Defendant moved to strike the affidavits of plaintiff's witnesses. Plaintiff moved to strike defendant's affidavits.

After oral argument, the trial court granted defendant's motion for summary judgment and denied plaintiff's motion for summary judgment. Plaintiff appealed.

Plaintiff's first and second enumerations of error are that the trial court erred in denying plaintiff's motion for summary judgment and in granting defendant's motion for summary judgment. We agree.

The plain and unambiguous language of the agreement obligates defendant to pay PLI's federal taxes and to indemnify plaintiff for any federal taxes that he had to pay on behalf of PLI. See *Hartley-Selvey v. Hartley*, 261 Ga. 700 (410 SE2d 118) (1991); *CareAmerica v. Southern Care Corp.*, 229 Ga. App. 878 (494 SE2d 720) (1997). However, the phrase "federal taxes" is ambiguous, because it may include corporate income tax, fiduciary fund taxes, interest, and penalties. The parties do not agree that 26 USC § 6672 penalties come within this provision, but agree that PLI was under a duty to pay over the employees' withholding taxes under 26 USC § 7501. The trial court refused to resolve such issue of construction and instead resolved the dispute under federal public policy that rendered the indemnity agreement void.

(a) The Internal Revenue Code § 7501, 26 USC § 6672, imposes the obligation upon the employer to collect, report, and pay over such trust account taxes. Failure to do so makes the employer and officers liable for such sums as "responsible persons." See 26 USC § 6672. Under 26 USC § 6672, while the IRS can collect trust account taxes

from the responsible person, it cannot collect late penalties and interest levied against the employer for non-payment. See *First Nat. Bank in Palm Beach v. United States*, 591 F2d 1143, 1149 (5th Cir. 1979).

Under 26 USC § 7501 (a), an employer is required to withhold taxes from employees in a "special fund in trust for the United States." Under 26 USC § 6672 (a), the IRS may impose "a penalty equal to the total amount of the tax evaded[.]" The IRS can make such assessment of 100 percent of the payroll withholding liability against all people liable for such taxes. But 26 USC § 6672 policy limits the IRS to only one satisfaction of the payroll tax liability. *Gens v. United States*, 615 F2d 1335, 1339 (222 Ct. Cl. 407) (1980). Such penalty is to be levied against "(1) a responsible person, who has (2) willfully failed to perform a duty to collect, account, or pay over the taxes. [Cit.]" *George v. United States*, 819 F2d 1008, 1011 (11th Cir. 1987). The levy under 26 USC § 6672 against the responsible person, who has committed a "flagrant violation of the law," is based on a willful breach of trust imposed by statute. *Smith v. United States*, 894 F2d 1549, 1553 (11th Cir. 1990).

> The Code and the regulations thereunder require employers to withhold from employees' paychecks the employees' share of FICA taxes and income taxes. See *Slodov v. United States*, 436 U. S. 238, 242-43 (98 SC 1778, 1782-83, 56 LE2d 251) (1978). See also 26 CFR §§ 31.6011 (a)-1, 31.6011 (a)-4. Once the employer deducts funds from the employees' checks, the Government credits the employees for the funds withheld. Regardless of whether or not the employer pays the withheld taxes over to the Government, the Government's only recourse is against the employer. *Slodov* [*v. United States, supra* at 1783]. Withheld funds constitute a trust in favor of the United States from the time that the employer deducts them from employees' checks, and the employer is liable to the Government for any amounts withheld. Id.; Code § 7501 (a).

*Smith v. United States*, supra at 1552-1553. "[T]he purpose of section 6672 . . . is to give the Government a second person to turn to in the event that withholding taxes prove uncollectible from the employer. [Cits.]" Id. at 1555.

(b) Under 26 USC § 6672, the sum imposed upon the officers for failure to pay the employees' trust fund taxes is designated a penalty. Notwithstanding such designation, it is a sum equal to the trust fund taxes of the employees that the officers failed to turn over to the IRS. See *United States v. Sotelo*, 436 U. S. 268, 275 (98 SC 1795, 56 LE2d 275) (1978); see also *Smith v. United States*, supra at 1553; *Botta v.*

*Scanlon*, 314 F2d 392 (2nd Cir. 1963). However, 26 USC § 6671 (a) expressly provides that "any reference in this title to 'tax' imposed by this title shall be deemed also to refer to the penalties and liabilities provided by this subchapter (including [26 USC] § 6672)." (Citation omitted.) *Botta v. Scanlon*, supra at 393.

> The funds here involved[, employee withholding taxes,] were unquestionably "taxes" at the time they were "collected or withheld from others." . . . That the funds due are referred to as a "penalty" when the [IRS] later seeks to recover them does not alter their essential character as taxes . . . at least in a case in which, as here, the § 6672 liability is predicated on a failure to pay over, rather than a failure initially to collect, the taxes.

*United States v. Sotelo*, supra at 275. Thus, the penalty is a mere collection device to recover the unpaid taxes and does not impose an additional penalty beyond the taxes owed. See *Newsome v. United States*, 431 F2d 742, 745 (5th Cir. 1970); *United States v. Molitor*, 337 F2d 917 (9th Cir. 1964). "The nature of the penalty imposed . . . shows that § 6672 is simply a means for ensuring that the tax is paid, and does not impose a criminal liability." *Botta v. Scanlon*, supra at 393. The IRS treats payment of the trust account sums under 26 USC § 6672 as a tax. See *Kelly v. Lethert*, 362 F2d 629, 633 (8th Cir. 1966); *Botta v. Scanlon*, supra at 393. Consequently, the IRS can collect such trust account sums only once, no matter who ultimately pays it. *United States v. Huckabee Auto Co.*, 783 F2d 1546 (11th Cir. 1986); *Newsome v. United States*, supra at 742; *Gens v. United States*, supra at 1339; *Brown v. United States*, 591 F2d 1136, 1142-1143 (5th Cir. 1979); *Kelly v. Lethert*, supra at 635. The IRS cannot collect 26 USC § 6672 sums greater than the amount due as a delinquent tax. *United States v. Sotelo*, supra at 279, n. 12; see also *United States v. Security Pacific Business Credit*, 956 F2d 703, 705, 707 (7th Cir. 1992).

(c) In pre-1996 tax refund cases, several federal district courts have refused to recognize contribution or indemnification theories under 26 USC § 6672 as a federal claim; this occurs when the IRS either brings in a third-party defendant or additional defendant in counterclaim on a refund case. In *Rebelle v. United States*, 588 FSupp. 49, 51 (M.D. La. 1984), relied upon by the defendant, the trial court wrote, "[t]he question for this Court, then, is whether a statutory right to contribution under section 6672 has been sanctioned by Congress." In 1984, the answer was no, but the federal trial court went on to reject a state contract indemnity claim for the same reasoning, although it had no subject matter jurisdiction over such claim

as a state action. Id. The federal district courts have no original subject matter, ancillary, or pendent jurisdiction over state indemnity claims.

> It is well settled that an individual subject to a tax assessment pursuant to § 6672 has no federal common law or statutory right of action for contribution or indemnity against another individual who may also be so liable. . . . It has been consistently recognized in the federal courts that where an action is patently without merit, a federal court may dismiss such action for want of subject matter jurisdiction.

(Citations and punctuation omitted.) *Cook v. United States*, 765 FSupp. 217, 219 (M.D. Pa. 1991). Therefore, to simplify the tax collection process, such state claims were routinely dismissed because of the limited subject matter jurisdiction of federal courts. See *United States v. Amerson*, 808 FSupp. 695 (W.D. Mo. 1992); *Cook v. United States*, supra; *Rebelle v. United States*, supra at 52.[1] Federal district courts have given many reasons for the deniability of such claims in federal court under federal contribution or state indemnity theories.[2]

---

[1] See also *DiBenedetto v. United States*, 35 AFTR2d 75-1502; 75-1 USTC ¶ 9503 (D.R.I. 1974); *Cohen v. United States*, 35 AFTR2d 75-1445 (E.D. Mich. 1975); *Geiger v. United States*, 41 AFTR2d 78-1230 (D.Md. 1978); *Hanhauser v. United States*, 85 FRD 89 (M.D. Pa. 1979); *Moats v. United States*, 564 FSupp. 1330 (W.D. Mo. 1983); *Rice v. Pearce*, 574 FSupp. 23 (S.D. Iowa 1983); *Swift v. Levesque*, 614 FSupp. 172 (D. Conn. 1985); *Schoot v. United States*, 664 FSupp. 293 (N.D. Ill. 1987); *Continental Illinois Nat. Bank & Trust Co. v. United States*, 87-2 US Tax Cas. ¶ 9442 (E.D. Ill. 1987); *Padalino v. United States*, 89-2 US Tax Cas. ¶ 9632 (D.C. N.J. 1989); *Cook v. United States*, supra; *Carlucci v. United States*, 793 FSupp. 482 (S.D. N.Y. 1992).

[2] The majority of the courts which have considered this question have concluded that no such right [to contribution under IRC] exists. This Court agrees with the majority. The seminal case on this question is *DiBenedetto v. United States*, [supra]. In *DiBenedetto*, the court concluded that no such statutory right to contribution existed, and articulated several policy reasons which supported this conclusion. First, in addition to any taxes which might be owed, section 6672 provides that the penalty for nonpayment of such taxes is 100% of the taxes owed. The penal nature of this statute would be reduced, if not entirely defeated, by allowing a person found to be a "responsible person" to share the burden or cost of this assessment. Another reason given by the court was that the penalty is only assessed for the *willful* failure to collect or truthfully account for these taxes, which suggests a higher degree of culpability than the person whose act was merely accidental or inadvertent. As the court noted in *DiBenedetto*, courts have been loath to extend to a right of contribution in favor of an intentional wrongdoer who has acted *in pari delicto* with others. This Court would add that denial of a right of contribution serves another useful purpose in addition to those mentioned above. The threat that any one of a group of responsible persons could be held to pay 100% of the penalty without benefit of contribution, while the other actors might altogether avoid payment of even a portion of the penalty, might provide sufficient incentive for one or more in the group to act lawfully and pay or account for the taxes in question. A 'responsible

However, the right to bring such contract claims in state forums has not been prohibited by the federal district court opinions stating federal public policy, regarding federal tax administration, collection, and refund.[3] "Clearly, the 'statute serves as a collection device for the government, and not as a source of a cause of action between or among persons found to be "responsible" parties.' [Cit.]" *Cook v. United States*, supra at 219.

In this case, plaintiff paid the IRS all the taxes due and did not seek a tax refund in federal district court but, instead, seeks reimbursement from the defendant under the written agreement for indemnity, which was the consideration for the PLI stock transfer. Therefore, no delay or interference with the collection policies of the IRS resulted from this case, nor have federal courts been burdened. Therefore, no federal public policy is involved in this case that would prohibit a state contract claim for indemnification. See *Schoot v. United States*, supra at 298; *Swift v. Levesque*, supra at 173.

While most of these federal district court opinions may hold that, to allow indemnity would frustrate federal tax policy to penalize the responsible party, such cases are merely persuasive and not binding. Further, they do not even come from the Eleventh Circuit. The foregoing Supreme Court and Circuit Court of Appeals cases do not prohibit indemnification in *state* actions for a 26 USC § 6672 penalty after it has been paid by the responsible person. Thus, the trial court erred as a matter of law.

Further, 26 USC § 6672 (d)[4] was added by amendment in 1996 to provide a new federal right of contribution, so that Congress has drastically changed the pre-existing court-made federal policy in this regard.[5] In fact, the Congressional legislative history to this amend-

---

person's' resolve to willfully fail to collect such taxes may be weakened when faced with the possibility of bearing all of the 100% penalty than it would be if there was a right to spread and diversify this burden or risk among the group. The need for government action to collect these taxes is obviated if only one potentially liable person in a group of potentially liable people acts properly. The risk of bearing this penalty alone may bring that one person to the forefront a little more readily, and thus save the government the additional enforcement expenses.
(Emphasis supplied.) *Rebelle v. United States*, supra at 51.

[3] *Schoot v. United States*, supra at 298; *Swift v. Levesque*, supra at 177; and *Reid v. United States*, 558 FSupp. 686 (N.D. Miss. 1983), allowed an action for indemnification in federal court of funds paid under 26 USC § 6672.

[4] P. L. 104-168, § 903, Title IX, 110 Stat. 1465.

[5] Legislative history — 4 1996 U. S. Code Congressional and Administrative News, pp. 1143, 1163 "Present law":
A responsible person may seek to recover part of the amount which he has paid to the IRS from other individuals who also may have the obligations of a responsible person but who have not yet contributed their proportionate share of their liability under Section 6672. Taxpayers must pursue such claims for contribution under state law (to the extent state law permits such claims). The variations in state law sometimes make it difficult or impossible to press successful suits in state courts to

ment plainly states that, prior to the amendment, responsible persons could bring actions in *state* courts under *state* theories of contribution and indemnity for reimbursement. Thus, the trial court erred in this state contract action for indemnification by applying federal public policy as barring such *state* action.

(d)

> The construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. *Century 21 Pinetree Properties v. Cason*, 220 Ga. App. 355, 358 (2) (d) (469 SE2d 458) (1996).

*CareAmerica v. Southern Care Corp.*, supra at 880. Ambiguity exists when the meaning is uncertain, and the language may be fairly understood in more than one way. Id. at 881. Thus, "federal tax" in the indemnity agreement may be construed to mean only federal corporate income taxes owed by the corporation or may include withholding trust fund taxes as well as interest and penalties; such fair interpretations render the indemnity agreement ambiguous regarding the meaning of federal taxes, even though the Revenue Code defines the term taxes to include penalties. See 26 USC § 6671 (a).

"The cardinal rule of contract construction is to ascertain the intention of the parties." OCGA § 13-2-3. Since PLI was in financial difficulty, then it had no income and no federal corporate income tax liability. However, it did have a long history of liability for trust fund taxes withheld from employees under 26 USC § 7501, for which plaintiff could be held liable as the responsible person. Further, the agreement expressly excluded "any state withholding taxes, and the parties' respective rights or liabilities concerning any state withholding taxes," which demonstrates that the parties had in mind such

---

force a contribution from other responsible persons.

"Reasons for change": "The IRS may collect this penalty from a responsible person with the greatest culpability for the failure. It would accordingly promote fairness in the administration of the tax laws to establish a right of contribution among multiple responsible parties."

class of tax liability and intended that "federal taxes" meant federal withholding taxes because the comparable state taxes were expressly excluded but such federal withholding taxes were not expressly excluded. See OCGA §§ 48-7-101; 48-7-106 (c); 48-7-108; 48-7-109. If the penalty under 26 USC § 6672 was not intended to come within the federal tax indemnity, then plaintiff would receive no real consideration for the transfer of his stock.

"If the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred." OCGA § 13-2-2 (5). While both parties executed the agreement, plaintiff fully performed by transferring the PLI stock, leaving defendant to perform by paying the federal taxes and indemnifying plaintiff from federal taxes. Therefore, the interpretation that does not relieve the defendant from liability for the federal trust fund withholding taxes is the one to be preferred. *CareAmerica v. Southern Care Corp.*, supra at 881. PLI had failed to pay all federal trust fund withholding taxes.

Generally, parol evidence is not admissible "to add to, take from, or vary a written contract," because the language of the indemnity is not clear; however, we may consider "[a]ll the attendant and surrounding circumstances" to explain the ambiguity. OCGA § 13-2-2 (1); *CareAmerica v. Southern Care Corp.*, supra at 881. PLI had a history of late filings and payments of the trust account taxes under plaintiff; therefore, the indemnity against all federal taxes, interest, and penalties of the plaintiff was the sole consideration that he received or wanted and that the parties bargained for. Thus, the parties intended that plaintiff be protected by (1) the defendant's promise to pay all federal taxes, including the trust fund withholding taxes; and (2) the promise to indemnify plaintiff against any tax liability of PLI that he was required to pay under 26 USC § 6672 or other federal taxes. Since plaintiff immediately transferred his PLI stock and resigned as officer, then the only federal taxes that he could become liable for would be under 26 USC § 6672.

Since, as a matter of law, the IRS cannot levy against the responsible party under 26 USC § 6672 unless the trust fund taxes have not been paid, and since, as a matter of law, the IRS can satisfy the trust fund taxes only once, the legal presumption then arises that neither PLI nor the defendant paid the federal trust fund taxes, because the IRS levied against and fully collected the trust fund taxes from the plaintiff as the responsible person. See *United States v. Sotelo*, supra at 275, 279, n. 12; *United States v. Schroeder*, 900 F2d 1144, 1146, and n. 1 (7th Cir. 1990); *United States v. Huckabee Auto Co.*, supra; *Newsome v. United States*, supra; *Brown v. United States*, supra. Therefore, the legal presumption arises that the trust fund taxes were not paid by PLI. Thus, defendant breached his promise to

pay PLI's taxes and breached his promise to indemnify the plaintiff against any and all federal taxes that he was forced to pay on behalf of PLI. The trial court erred in granting summary judgment to the defendant and denying summary judgment for the plaintiff as a matter of law. See OCGA § 9-11-56 (e); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

*Judgment reversed. Pope, P. J., and Barnes, J., concur. Blackburn, P. J., and Senior Appellate Judge Harold R. Banke concur specially. Johnson, C. J., and Smith, J., dissent*

Senior Appellate Judge Harold R. Banke, concurring specially.

I fully concur with the majority but write separately to emphasize several points.

To conclude their litigation, the parties executed a 12-page settlement agreement on May 31, 1988. Within this contract, they signed mutual releases and agreed to the transfer of all of Lostocco's stock ownership in PLI to D'Eramo. Their settlement contract also included an Article 3 which bore the title: "Reimbursements/Assumptions/Indemnities." This section providing for reimbursements, assumptions, and indemnities contains ¶ 3.02 which states, "Second Parties [D'Eramo and others] (except Ruby) *shall pay* and hereby agree to indemnify First Parties [including Lostocco] and each of them, from and against any liability for federal taxes arising out of PLI and its operations." (Emphasis supplied.)

As I read the plain and unambiguous language of ¶ 3.02, D'Eramo and the others agreed not only to indemnify Lostocco against any federal tax liability but also to reimburse or to "pay . . . any liability for federal taxes." It is undisputed that the liability at issue arose out of the operation of PLI and its apparent underpayment of federal taxes for the tax periods ending 12/31/86 and 3/31/87. PLI incurred this tax liability notwithstanding a tax refund check for more than $18,000 from the IRS made payable to PLI in mid-1987 for PLI's overpayment of taxes. In his deposition, D'Eramo confirmed that in 1987, PLI did, in fact, receive a refund check of $18,000 from the IRS.

It is also undisputed that after entering into the settlement agreement in May 1988, D'Eramo did not pay the taxes incurred during the operation of PLI in 1986 and 1987, notwithstanding the fact that D'Eramo controlled the operation of PLI after the settlement agreement and despite Lostocco's repeated letters requesting that he do so. As the unpaid assessments and statutory additions continued to remain unpaid by PLI, interest continued to accrue. Ultimately, due to PLI's complete failure to pay the outstanding balance, the IRS decided to proceed against Lostocco whom PLI had designated as its corporate president on Form 433-B, "Collection Information State-

ment for Businesses," completed on 12/8/87 for IRS use.

About ten months after the parties entered into their settlement agreement, the IRS addressed the following notice dated March 27, 1989 to Lostocco:

> Our efforts to collect Federal taxes described in the enclosed Form 2751 have not resulted in the full payment of the corporate *tax liability*. We therefore propose to assess a penalty against you as a person required to collect, account for, and pay over withheld taxes for the above corporation [Performance Leasing, Inc.].

(Emphasis supplied.) The enclosed IRS Form 2751 (a proposed assessment for $18,917.53) stated that it was a "Report of Corporation's Unpaid Tax Liability." When the Notice of IRS Levy dated 10/18/90 remained unsatisfied by PLI, the IRS proceeded in February 1991 to levy not against PLI or D'Eramo but against Lostocco's bank accounts.

Without question, the evidence established that D'Eramo breached the terms of the settlement by not paying the amount due to the IRS as set forth on Form 2751, the "Report of Corporation's [PLI's] *Unpaid Tax Liability*." (Emphasis supplied.) To embrace the strained contract construction employed by D'Eramo, we must overlook the express contract terms by which D'Eramo agreed "to pay . . . any liability for federal taxes." Although the parties could have drafted their contract terms differently and specified that D'Eramo would not be obligated to pay any interest or penalties relating to the liability for federal taxes, they did not elect to do so. Under the guise of construing the contract, we cannot alter its plain and unambiguous terms.

I am also concerned that the dissent ignores the fact that the IRS elected to proceed against Lostocco personally only after PLI, the corporation being operated by D'Eramo after the settlement agreement was entered, failed to pay the tax liability owed by PLI and sought by the IRS. I cannot imagine how public policy would be furthered by permitting D'Eramo to evade the plain terms of a contract to which he freely assented. Nor can I see how the public interest would be advanced by precluding indemnification or contribution for liability incurred under 26 USC § 6672. Congress implicitly rejected the position of the dissent by amending 26 USC § 6672 in 1996 to add subsection (d) which ensures a statutory right to contribution where more than one person incurs liability under § 6672.

I am authorized to state that Presiding Judge Blackburn joins in this special concurrence.

SMITH, Judge, dissenting.

I respectfully dissent. In Georgia, an indemnity clause must be strictly construed against the indemnitee. See, e.g., *DeKalb County v. Lenowitz*, 218 Ga. App. 884, 889 (4) (463 SE2d 539) (1995); *McMichael v. Robinson*, 162 Ga. App. 67, 69 (2) (290 SE2d 168) (1982). Here, the indemnity clause in the settlement agreement required D'Eramo to indemnify Lostocco "from and against any liability for federal taxes arising out of PLI and its operations." It did not expressly require indemnification for the assessment of a penalty. The assessment against Lostocco, even though it may have been "assessed and collected like tax," was an assessment against Lostocco personally of a *penalty* under 26 USC § 6672. Liability under this statute "may be imposed only upon (1) a responsible person, who has (2) willfully failed to perform a duty to collect, account, or pay over the taxes. [Cits.]" *George v. United States*, 819 F2d 1008, 1011 (11th Cir. 1987).

While Lostocco argues that the penalty was, in fact, a tax, I do not agree. First, the Code itself identifies liability under § 6672 as a penalty. 26 USC § 6672 (a). Also, I find persuasive the federal authority relied on by the trial court and by D'Eramo for the proposition that § 6672 is penal in character. See, e.g., *Stallard v. United States*, 12 F3d 489, 493 (5th Cir. 1994) (distinguishing penalty under § 6672 from liability on employer to remit trust fund taxes); *Rebelle v. United States*, 588 FSupp. 49, 51 (M.D. La. 1984); *United States v. Amerson*, 808 FSupp. 695, 696 (W.D. Mo. 1992). *United States v. Sotelo*, 436 U. S. 268 (98 SC 1795, 56 LE2d 275) (1978) is not controlling on this issue. In quoting this case, the majority omits an essential phrase. The Court in *Sotelo* stated, in relevant part,

> The funds here involved were unquestionably "taxes" at the time they were "collected or withheld from others." . . . That the funds due are referred to as a "penalty" when the Government later seeks to recover them does not alter their essential character as taxes *for purposes of the Bankruptcy Act*, at least in a case in which, as here, the § 6672 liability is predicated on a failure to pay over, rather than a failure initially to collect, the taxes.

(Emphasis supplied.) Id. at 275.

As argued by D'Eramo, *Sotelo* is distinguished from this case. There, the "responsible person" filed bankruptcy and attempted to avoid liability under § 6672 by arguing that the penalty was dischargeable. Id. at 272. The Supreme Court rejected this argument and concluded that for purposes of the Bankruptcy Act, the penalty would be treated as a tax. The issue here is not dischargeability or

nondischargeability under the Bankruptcy Act but instead involves construction of indemnity language in a contract. And as discussed above, the contract language in this case requires indemnification for tax liability, not for penalties. Given the general rule that contracts of indemnity must be strictly construed against the indemnitee, the trial court correctly granted summary judgment in favor of D'Eramo and denied summary judgment to Lostocco.

Moreover, the trial court's ruling was correct on public policy grounds. The trial court concluded that the settlement agreement could not be construed to include indemnification for assessment of penalties under § 6672 "because such a construction would violate public policy and frustrate the IRS' intent in pursuing plaintiff and not defendant for collection of the funds at issue." As stated in *Cook v. United States*, 765 FSupp. 217 (M.D. Pa. 1991), the statute at issue here

> has been construed by several courts as penal in nature. Thus, to allow parties to recover from other responsible persons would greatly hinder the deterrent purpose of the statute. Without the possibility that any one of several responsible persons might be held solely accountable for a penalty imposed without benefit of contribution, little incentive would exist for anyone to act in accordance with the law by coming forward *sua sponte* to pay or account for the taxes in question.

(Citation and punctuation omitted.) Id. at 219-220. Moreover,

> when a person *willfully* acts and has a penalty assessed pursuant to section 6672, that person should not and must not have that liability for the penalty shared or placed wholly on another because of some contractual or fiduciary duty. The sound policy reasons against allowing a right of contribution or indemnity to someone who has willfully, consciously, and intentionally acted must and do apply under the facts of this case. The high penalty, and the omission by Congress of such a statutory right of contribution or indemnity, are intended to deter such willful conduct. It is for the Congress and not the courts to formulate a common law right of contribution when a penalty is assessed under section 6672.

*Rebelle*, supra at 52. See also *Amerson*, supra at 69.

Finally, I note that Lostocco did not contest or otherwise appeal the findings implicit in the decision by the IRS to assess a penalty under § 6672: that he was a responsible person and that he acted willfully. He consequently waived any right to seek indemnification

from D'Eramo. See generally *GAF Corp. v. Tolar Constr.*, 246 Ga. 411, 412 (271 SE2d 811) (1980) (indemnification unavailable where party seeking indemnification had valid defense but failed to assert it).

I am authorized to state that Chief Judge Johnson joins in this dissent.

DECIDED MAY 26, 1999.

*Raiford, Dixon & Thackston, Tyler C. Dixon*, for appellant.
*Weiner, Yancey, Dempsey & Diggs, Beryl H. Weiner, Thomas C. Dempsey*, for appellee.