A01A1509. WHITE et al. v. BOARD OF COMMISSIONERS OF McDUFFIE COUNTY et al.

(555 SE2d 45)

RUFFIN, Judge.

A group of McDuffie County residents ("the residents") sued the Board of Commissioners of McDuffie County ("the Board of Commissioners"), the McDuffie County Development Authority ("the Authority"), and the City of Thomson, seeking declaratory and injunctive relief relating to a change in zoning classification. The trial court granted summary judgment to the defendants, and the residents appeal. For reasons that follow, we affirm.

Summary judgment is appropriate where the evidence of record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] We review a grant of summary judgment de novo, construing the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the nonmovant.[2]

Viewed in this light, the record shows that on July 9, 1999, the Authority contracted to purchase a large tract of land for use as an industrial park ("the property"). At that time, the property was zoned for residential use. The Authority arranged financing through SunTrust Bank, and four other banks subsequently agreed to participate with SunTrust in the loan. Shortly after the Authority signed the contract, it applied for a zoning change.[3] Although the Authority initially requested that the property be rezoned for high industrial use, it later lowered its request to light industrial use.

---

[1] OCGA § 9-11-56 (c).

[2] *Moore v. ECI Mgmt.*, 246 Ga. App. 601 (542 SE2d 115) (2000).

[3] The City of Thomson also participated in the property acquisition, as well as the rezoning request.

On September 1, 1999, the Board of Commissioners approved the Authority's rezoning application as to part of the property. The residents, who owned nearby property, sued the defendants in superior court, alleging that the rezoning action was procedurally defective, void, and unconstitutional. In their suit, the residents sought to enjoin the Board of Commissioners from "allowing or carrying out any action putting into effect the new and illegal rezoning." They also asked the court to declare the rezoning null, void, and unconstitutional.

The Authority closed its purchase of the property on January 10, 2000. After the closing, it submitted another application for rezoning, apparently to correct procedural defects in the first application. On March 21, 2000, the Board of Commissioners again voted to rezone the property previously approved for rezoning on September 1, 1999. One month later, the residents filed a second suit against the defendants, alleging that the March 21, 2000 rezoning process was procedurally defective, void, and unconstitutional. The residents asked for the same relief requested in the first suit.

The defendants moved for summary judgment,[4] and the trial court consolidated the two lawsuits for purposes of its summary judgment ruling. In a detailed order, the trial court rejected the residents' procedural and constitutional challenges to the rezoning procedure.

1. As an initial matter, we must address the defendants' motion to dismiss this direct appeal. They argue that because the case involves zoning issues, the residents were required to apply for discretionary appeal.[5] We disagree.

Under OCGA § 5-6-35 (a) (1), "[a]ppeals from decisions of the superior courts reviewing decisions of . . . local administrative agencies" must proceed through application, rather than direct appeal. In *Trend Dev. Corp. v. Douglas County*,[6] our Supreme Court stated broadly that, pursuant to this Code provision, "appeals in zoning cases . . . require an application." Since *Trend Dev.*, the Supreme Court has clarified that a direct appeal is proper "[w]here a zoning case does not involve superior court review of an administrative decision."[7]

---

[4] The record includes only the Board of Commissioners' summary judgment motions. It appears from the trial court's order and the parties' submissions on appeal, however, that *all* defendants moved for and received summary judgment.

[5] Apparently uncertain of how to proceed, the residents filed an application for discretionary appeal, as well as a direct appeal. We denied the residents' application on March 30, 2001.

[6] 259 Ga. 425 (1) (383 SE2d 123) (1989), limited on other grounds, *City of Atlanta v. Cates*, 260 Ga. 772, 773 (1) (399 SE2d 474) (1991).

[7] *King v. City of Bainbridge*, 272 Ga. 427, 428 (1) (531 SE2d 350) (2000). See also *Harrell v. Little Pup Dev. & Constr.*, 269 Ga. 143, 144 (1) (498 SE2d 251) (1998).

The residents did not appeal the Board of Commissioners' September 1, 1999 and March 21, 2000 zoning decisions to the superior court. Instead, they filed lawsuits directly against the defendants, seeking injunctive and declaratory relief.[8] The discretionary appeal procedure does not apply to this case, which involves no appeal from a local administrative decision.[9] Accordingly, the residents properly proceeded through direct appeal, and the defendants' motion to dismiss must be denied.[10]

2. The residents claim that conflicts of interest influenced the Board of Commissioners' decision on the rezoning applications, rendering the rezoning fraudulent, corrupt, void, and unconstitutional. In granting summary judgment to the defendants, the trial court found no conflict and rejected this claim. The residents' arguments on appeal relate solely to this finding. Although they raise two enumerations of error, both rest on alleged conflicts of interest and personal motives.[11]

" 'When neighbors of rezoned property challenge the rezoning in court on its merits, it will be set aside only if fraud or corruption is shown or the rezoning power is being manifestly abused to the oppression of the neighbors.' "[12] Self-interested or conflicted participation in a zoning decision, which the residents allege here, will support such a challenge and invalidate a zoning action.[13] But, as described by our Supreme Court, the type of conflict or self-interest that voids a zoning decision is financial: the conflict arises "when a public officer, in the discharge of his public function, acts upon a measure relating to a *specific transaction* and such transaction shall *directly* and *immediately* affect his pecuniary interest."[14] A remote or

---

[8] The residents initially filed a petition for certiorari with the superior court to correct errors committed by the Board of Commissioners. They then recast their petition as a complaint against defendants for declaratory and injunctive relief.

[9] *Sprayberry v. Dougherty County*, 273 Ga. 503, 504 (1) (543 SE2d 29) (2001).

[10] The defendants also claim that the Supreme Court, rather than the Court of Appeals, has jurisdiction because this appeal involves constitutional questions. The Court of Appeals, however, can address constitutional issues where, as here, " 'the case requires merely an application of unquestioned and unambiguous constitutional provisions.' " *In the Interest of V. M. T.*, 243 Ga. App. 732, 734 (1) (b) (534 SE2d 452) (2000). See also *Scott v. State*, 157 Ga. App. 608 (1) (278 SE2d 49) (1981).

[11] In their first enumeration of error, appellants claim that because "significant other loyalties" influenced the votes of several commissioners, the rezoning proceeding violated the Georgia Constitution. Second, appellants allege that "in making decisions about public matters, while laboring under the influence of irrelevant personal motives, the public officials in this case acted in an arbitrary and capricious manner and abused the police power vested in them."

[12] *Lindsey Creek Area Civic Assn. v. Consolidated Govt. of Columbus*, 249 Ga. 488, 491 (292 SE2d 61) (1982).

[13] *Olley Valley Estates v. Fussell*, 232 Ga. 779, 783-784 (1) (208 SE2d 801) (1974).

[14] (Emphasis in original.) *Dept. of Transp. v. Brooks*, 254 Ga. 303, 317 (8) (328 SE2d 705) (1985).

speculative financial interest will not support a conflict of interest allegation.[15]

As evidence of a conflict, the residents point out that William Howard, a member of the Board of Commissioners, was vice president of a bank that participated in financing the property's acquisition.[16] They further claim that a conflict arose because Commissioners Lemuel Brooks and Joyce Blevins were also members of the Authority, which requested the rezoning.[17]

None of these alleged conflicts raises an issue of fact regarding self-interested or conflicted participation in the rezoning decision. With respect to Commissioner Howard, the residents have presented no evidence that the rezoning of this property *"directly* and *immediately* affect[ed] his pecuniary interest."[18] They simply argue that because he was vice president of a bank that financed the rezoned property's acquisition, he had a conflict. Without more, that assertion is mere supposition and innuendo. The residents have not pointed to any evidence that Howard "definitely benefitted financially (or definitely stood to benefit financially) as a result of simply performing [his] official duties."[19] Accordingly, the conflict allegedly created by Commissioner Howard's position with a financing bank is too remote and speculative to withstand summary judgment.[20]

We also find no evidence that Commissioners Brooks and Blevins operated under a conflict of interest in approving the rezoning applications. The residents argue that, as members of the Board of Commissioners *and* the Authority, Brooks and Blevins had conflict-

---

[15] *Olley Valley Estates,* supra at 784.

[16] The record shows that Commissioner Howard did not attend the March 21, 2000 meeting at which the Board of Commissioners approved the rezoning request for a second time. The defendants argue that Howard's absence precludes the residents' conflict of interest claim. In *Dunaway v. City of Marietta,* 251 Ga. 727, 729 (3) (308 SE2d 823) (1983), however, the Supreme Court indicated that a conflict of interest may influence a zoning proceeding even if the conflicted commissioner does not vote.

[17] In addition, the residents assert that two other members of the Authority had ties to financing banks and helped inflate the property's purchase price, benefitting these banks. The residents, however, did not try to void the property acquisition in their lawsuits. Instead, they sought to enjoin the rezoning of this property from residential to light industrial use. The residents have made no effort to show how the link between these Authority members and the banks is relevant to their rezoning challenge. The residents similarly have not shown how alleged ties between a financing bank and the county attorney — who provided legal advice to the Board of Commissioners, but was not a member — establishes a conflict of interest sufficient to void the rezoning.

[18] (Emphasis in original.) *Brooks,* supra.

[19] *Ianicelli v. McNeely,* 272 Ga. 234, 236 (2) (527 SE2d 189) (2000).

[20] Cf. *Wyman v. Popham,* 252 Ga. 247-248 (2) (312 SE2d 795) (1984) (evidence that two members of Board of Commissioners provided construction materials and "gutter work" to real estate developer applying for rezoning was sufficient to authorize finding of fraud and corruption); *Dunaway,* supra (factual issue remained as to conflict of interest where chairman of the planning commission, which voted to approve rezoning, was vice president of the corporation requesting rezoning).

ing duties to objectively review the rezoning applications and ensure that the Authority's property could be used as intended. The evidence shows, however, that Blevins was not a voting member of the Authority and thus did not directly participate in the decision to purchase the property. Furthermore, although Brooks held full voting membership on both the Authority and the Board of Commissioners, Georgia law authorized the Board of Commissioners to appoint one of its members to the Authority.[21] Brooks' dual role, therefore, was specifically sanctioned by statute. Finally, the residents have presented no evidence that Brooks or Blevins benefitted financially from the rezoning action.[22]

The residents failed to raise a question of fact as to whether a conflict of interest influenced the rezoning decision. Accordingly, their enumerations of error present no basis for reversal, and the trial court's summary judgment ruling must be affirmed.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 2, 2001 —
RECONSIDERATION DENIED OCTOBER 23, 2001 — 

*Capers, Dunbar, Sanders & Bruckner, Paul H. Dunbar III, Ziva P. Bruckner*, for appellants.

*Jenkins & Nelson, G. Carey Nelson III, Peter R. Olson, Fowler & Wills, Samuel A. Fowler, Jr.*, for appellees.

---

[21] OCGA § 36-62-5 (a).
[22] We note that the Authority is a nonprofit corporation created to benefit the public. OCGA § 36-62-3.