## A07A1204. DeKALB COUNTY v. CITY OF DECATUR et al.

### (651 SE2d 774)

BERNES, Judge.

This is a breach of contract action in which several cities inside DeKalb County allege that DeKalb County failed to properly calculate tax proceeds from the Homestead Option Sales and Use Tax ("HOST") owed to them under an agreement between the parties.[1] The trial court denied summary judgment to DeKalb County and granted summary judgment to the Cities on several issues. The primary question on appeal is whether the agreement constitutes an invalid intergovernmental contract under the Georgia Constitution of 1983, Art. IX, Sec. III, Par. I (a). Finding that it does, we reverse.

The HOST statute, OCGA § 48-8-100 et seq., creates 159 special tax districts coterminous with the geographical boundaries of each county in the state. OCGA § 48-8-102 (a). The statute provides that a county, acting as agent of the special tax district, may levy a one percent local sales and use tax upon receiving consent to do so from the voters of the district. OCGA § 48-8-102 (b). A county is authorized to use the tax revenues to take the place of, or "rollback," residential property taxes within the special tax district. OCGA §§ 48-8-102 (c) (1); 48-8-104 (c).

In January 1997, the General Assembly debated whether to amend the HOST statute so that a portion of the tax revenues could be used to fund capital improvements within a special tax district. The Cities refused to support the amendment because they believed that their citizens would receive less of a tax benefit than citizens in the unincorporated areas of DeKalb County. In order to secure passage of the amendment, DeKalb County agreed to share a portion of the HOST revenues with the Cities, with a formal intergovernmental agreement to be memorialized later if the electorate voted to implement the HOST tax. Consequently, the Cities withdrew their opposition to the HOST amendment, which passed and was signed into law. See Ga. L. 1997, pp. 1-6, §§ 1-7.

Under the amended HOST statute, no less than 80 percent of the revenues generated by the sales and use tax must be used for residential property tax relief within the special tax district. OCGA §§ 48-8-102 (c) (1); 48-8-104 (c). A maximum of 20 percent of the revenues, in turn, may be used to fund "capital outlay projects." OCGA § 48-8-104 (c) (2) (A).

---

[1] The cities are the City of Decatur, the City of Chamblee, the City of Doraville, and the City of Stone Mountain (collectively, the "Cities"). The City of Decatur initially commenced the action, while the remaining cities formally joined the action later.

The voters of DeKalb County approved implementation of the amended HOST statute. DeKalb County and the Cities subsequently entered into a 49-year agreement under which the County would make annual disbursements to the Cities from the 20 percent portion of the HOST revenues dedicated for capital outlay projects. The disbursement would be "calculated by determining the amount of dollars needed to equalize the County millage rollback in the [Cities] with the County millage rollback in the unincorporated areas of the County." Upon disbursement of the revenues, the Cities agreed "to expend the monies . . . solely for capital outlay projects to be located within the geographical boundaries of DeKalb County." While the Cities were required to submit a written schedule to the County providing information about the capital outlay projects that they chose to spend the tax revenues on, the agreement provided that "[t]he purpose of [the] written schedule [was] to provide the County with an activities report and [was] not meant to grant or infer in any way project approval powers to the County, except to determine whether a project [met] the criteria for a capital outlay project." Other than terminating the agreement with a particular municipality, DeKalb County had no authority to restrict or direct how the Cities would use the funds allocated to them.

A dispute thereafter arose over how to calculate the disbursements owed to the Cities, resulting in the Cities bringing the instant action against DeKalb County for breach of contract. DeKalb County moved for judgment on the pleadings, which the trial court granted on the ground that the HOST statute required the County alone to administer the tax revenues generated by the sales and use tax. This Court affirmed, see *City of Decatur v. DeKalb County*, 255 Ga. App. 868 (567 SE2d 332) (2002), but the Supreme Court of Georgia later reversed. See *City of Decatur v. DeKalb County*, 277 Ga. 292 (589 SE2d 561) (2003). The Supreme Court, however, expressly left open the issue of whether the agreement was constitutional under the Intergovernmental Contracts Clause of the Georgia Constitution of 1983, Art. IX, Sec. III, Par. I (a). See id. at 294.

On remand, DeKalb County moved for summary judgment on the ground that the agreement constituted an invalid intergovernmental contract. The Cities cross-moved for summary judgment on the issue of how to calculate the proceeds owed under the agreement and on whether the agreement constituted an unlawful gratuity under the Georgia Constitution of 1983, Art. III, Sec. VI, Par. VI (a). The trial court denied summary judgment to DeKalb County and granted summary judgment to the Cities. DeKalb County now appeals.

1. DeKalb County contends that the trial court erred in denying its motion for summary judgment because the agreement was invalid

under the Intergovernmental Contracts Clause of the Georgia Constitution of 1983, Art. IX, Sec. III, Par. I (a). We agree.[2]

The Georgia Constitution sets debt limits for local governments and provides that a county cannot incur "new debt" without the assent of a majority of its qualified voters. Ga. Const. of 1983, Art. IX, Sec. V, Par. I (a). Furthermore, the general rule is that a county "may not enter into a contract that lasts longer than that government's term of office because one council may not, by an ordinance, bind itself or its successors so as to prevent free legislation in the matters of [local] government." (Punctuation and footnote omitted.) *Greene County School Dist. v. Greene County*, 278 Ga. 849, 850 (607 SE2d 881) (2005). See OCGA § 36-30-3 (a). The Intergovernmental Contracts Clause creates an exception to these limitations on local government power, providing that

> [t]he state, or any institution, department, or other agency thereof, and any county, municipality, school district, or other political subdivision of the state may contract for any period not exceeding 50 years with each other or with any other public agency, public corporation, or public authority for joint services, for the provision of services, or for the joint or separate use of facilities or equipment; but such contracts must deal with activities, services, or facilities which the contracting parties are authorized by law to undertake or provide. . . .

Ga. Const. of 1983, Art. IX, Sec. III, Par. I (a).

The Supreme Court of Georgia has emphasized, however, that the Intergovernmental Contracts Clause does not authorize local governments "to enter into any and every contract which they might in their discretion deem advisable." *Mulkey v. Quillian*, 213 Ga. 507, 508 (100 SE2d 268) (1957). See also *Nations v. Downtown Dev. Auth.*, 255 Ga. 324, 327-328 (2) (a) (338 SE2d 240) (1985). Rather, two specific requirements must be met in order to create a valid intergovernmental contract: "First, the contract must pertain to the provision of services, or the joint or separate use of facilities or equipment. Second, the contract must deal with activities, services,

---

[2] The Court of Appeals has jurisdiction to address DeKalb County's contention. "The Court of Appeals . . . can address constitutional issues where, as here, the case requires merely an application of unquestioned and unambiguous constitutional provisions." (Citations and punctuation omitted.) *White v. Bd. of Commrs. of McDuffie County*, 252 Ga. App. 120, 122, n. 10 (555 SE2d 45) (2001). See *Berry v. City of East Point*, 277 Ga. App. 649, 652-653 (6) (a) (627 SE2d 391) (2006) (addressing constitutionality of agreement under the Intergovernmental Contracts Clause); *Hay v. Newton County*, 246 Ga. App. 44, 47-48 (3) (538 SE2d 181) (2000) (same).

or facilities which the contracting parties are authorized by law to undertake or provide." (Punctuation and footnotes omitted.) *Greene County School Dist.*, 278 Ga. at 851.

DeKalb County and the Cities disagree over whether the agreement should be construed as pertaining to the provision of services, thereby satisfying the first requirement of an intergovernmental contract.[3] "Where the language of the contract is plain, unambiguous, and capable of only one reasonable interpretation, no other construction is permissible." (Citation and punctuation omitted.) *Sorema North American Reinsurance Co. v. Johnson*, 258 Ga. App. 304, 307 (574 SE2d 377) (2002). Under such circumstances, "the contract alone is looked to for its meaning." *Lostocco v. D'Eramo*, 238 Ga. App. 269, 275 (d) (518 SE2d 690) (1999).

We conclude that the plain and unambiguous agreement between DeKalb County and the Cities shows that it is not a contract for "services" as that term is understood under the Intergovernmental Contracts Clause. Generally speaking, "service" is defined as "[t]he act of doing something useful for a person or company for a fee." Black's Law Dictionary, p. 1399 (8th ed. 2004). Similarly, in cases where an intergovernmental agreement has been upheld as a services contract, one party has agreed to perform a specific undertaking in return for receiving some type of payment, financing, or guarantee from the other party. See *Clayton County Airport Auth. v. State of Ga.*, 265 Ga. 24, 24-25 (1) (453 SE2d 8) (1995) (contract for expansion and use of an airport facility); *Reed v. State of Ga.*, 265 Ga. 458, 459 (1) (458 SE2d 113) (1995) (contract for the construction and operation of a water project); *Ambac Indem. Corp. v. Akridge*, 262 Ga. 773, 775-776 (3) (425 SE2d 637) (1993) (contract for garbage and solid waste disposal); *Youngblood v. State of Ga.*, 259 Ga. 864, 866-867 (4) (388 SE2d 671) (1990) (contract for construction of a recreational facility); *Frazer v. City of Albany*, 245 Ga. 399, 400 (2) (265 SE2d 581) (1980) (contract to finance construction of a civic center). In contrast, simply loaning money, guaranteeing debt owed to bondholders, or waiving a tax commission does not constitute a "service." See *Greene County School Dist.*, 278 Ga. at 851; *Nations*, 255 Ga. at 326-328 (2) (a); *Mulkey*, 213 Ga. at 508-509 (1).

Here, the agreement does not involve the performance of a specific undertaking in return for receiving some type of payment, financing, or guarantee from the other party. Rather, it is simply a revenue-sharing agreement that specifies how to divide up HOST revenues between DeKalb County and the Cities, with the Cities

---

[3] The Cities do not argue that the agreement pertains to the joint or separate use of facilities or equipment.

spending the money allocated to them as they see fit, so long as they comply with the HOST statutory requirements for capital outlay projects. In other words, the agreement does nothing more than give the Cities a portion of the HOST revenues, with the added requirement that they spend the revenues in accordance with the HOST statute, as DeKalb County itself would have been required to do, if it had spent the revenues itself. Because a contract for the sharing of tax revenues is not a contract pertaining to the provision of "services," the agreement at issue here does not constitute a valid intergovernmental contract. Cf. *Greene County School Dist.*, 278 Ga. at 851 (county's waiver of tax commission owed by school board did "not involve the provision of services").

Our conclusion is buttressed by the HOST statute itself, which does not treat the term "capital outlay project" as synonymous with the provision of a "service." Notably, the General Assembly used the term "services" in other subsections of the HOST statute describing the allocation of tax revenues and thus drew a distinction between the two terms. Compare OCGA § 48-8-104 (c) (2) (A)[4] with OCGA § 48-8-104 (c) (2) (B)[5] and OCGA § 48-8-104 (c) (2) (C) (ii).[6] Clearly, if the General Assembly had wanted up to 20 percent of the tax revenues to be used exclusively for the provision of services, it knew how to say so, and "[w]e must presume that its failure to do so was a matter of considered choice." (Citation and punctuation omitted.) *Inland Paperboard & Packaging v. Ga. Dept. of Revenue*, 274 Ga. App. 101, 104 (616 SE2d 873) (2005). See also *Bauerband v. Jackson County*, 278 Ga. 222, 225-226 (3) (598 SE2d 444) (2004). Since DeKalb County and the Cities incorporated the statutory term "capital outlay project" into their agreement, it follows by extension that the agreement cannot be characterized as pertaining to the provision of services.

For these combined reasons, we conclude that the agreement between DeKalb County and the Cities was not a valid intergovernmental contract under the Georgia Constitution of 1983, Art. IX, Sec. III, Par. I (a), and that summary judgment therefore should have

[4] "A portion of [the HOST] proceeds shall be expended for the purpose of funding *capital outlay projects. . . .*" (Emphasis supplied.) OCGA § 48-8-104 (c) (2) (A).

[5] "A portion of [the HOST] proceeds shall be expended for the purpose of funding *services* within the special district equal to the revenue lost to the homestead exemption. . . ." (Emphasis supplied.) OCGA § 48-8-104 (c) (2) (B).

[6] In the event the rollback . . . exceeds the millage rate for county purposes, the governing authority of the county whose boundary is conterminous with the special district shall be authorized to expend the surplus funds for funding all or any portion of those *services* which are to be provided by such governing authorities pursuant to and in accordance with Article IX, Section II, Paragraph III of the Constitution of this state.
(Emphasis supplied.) OCGA § 48-8-104 (c) (2) (C) (ii).

been granted to DeKalb County. Accordingly, we reverse the trial court's denial of DeKalb County's motion for summary judgment.[7]

2. We need not consider DeKalb County's remaining enumerations of error, which are moot based on our decision in Division 1.

*Judgment reversed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 29, 2007 —

*King & Spalding, Jennifer R. Vala, L. Joseph Loveland, Jr., Letitia A. McDonald*, for appellant.

*Wilson, Morton & Downs, Robert E. Wilson, Bryan A. Downs, Keri P. Ware, Hugh R. Powell, Jr., Joe L. Fowler*, for appellees.

---

[7] The HOST statute was recently amended to provide for the state revenue commissioner to distribute an "equalization amount" of HOST proceeds to "qualified municipalit[ies]" for the funding of capital outlay projects by such municipalities. See OCGA § 48-8-104 (d)-(e) (2007); Ga. L. 2007, p. 598, §§ 1-5 (eff. May 29, 2007). A "qualified municipality" is defined as "a municipality created on or after January 1, 2007, lying wholly within or partially within a county." OCGA § 48-8-101 (4). Significantly, however, the amended statute further provides:

> In the event an existing municipality that has entered into an intergovernmental agreement with a county at any time before January 1, 2007, to receive capital outlay proceeds of the homestead option sales and use tax and such intergovernmental agreement has become or does become null and void for any reason, such existing municipality shall be treated under this article the same as if it were a qualified municipality as defined in paragraph (4) of Code Section 48-8-101 and therefore receive payment of equalization amounts under this article as provided for under this article.

OCGA § 48-8-104 (d) (3).