*Deborah Marie Pattison v. Todd Alan Pattison,* No. 110, September Term, 2023.  Opinion by Graeff, J.

**CONDITION PRECEDENT— WAIVER**

An offer to enter into a contract can include a condition that the offer be accepted within a stated time.  Where the time condition was sent in a letter attached to an email with a settlement agreement, the letter was part of the offer.  The condition precedent that the agreement must be signed by a certain date was not ambiguous, and because the agreement was not signed within the time required, a valid contract was not formed between the parties.

A party can waive strict compliance with a condition precedent.  Waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right and may result from an express agreement or be inferred from circumstances.  Here, there was no express waiver of the condition precedent, and there was no conduct indicating an intent to waive the condition.  Wife's failure to advise, for 17 days, that there was no contract due to Husband's failure to sign within the deadline did not constitute a waiver of the condition precedent of the formation of a contract; mere silence generally is insufficient to show waiver of contract rights.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 110

September Term, 2023

_____

DEBORAH MARIE PATTISON

v.

TODD ALAN PATTISON

_____

Graeff,
Nazarian,
Eyler, James R.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Graeff, J.

_____

Filed: August 1, 2024

* Ripken, J., did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

This is the second appeal filed in this Court by Deborah Marie Pattison ("Wife"), in connection with her divorce from Todd Alan Pattison ("Husband"). In the first appeal, Wife challenged the ruling of the Circuit Court for Anne Arundel County that the Voluntary Separation and Property Settlement Agreement signed by the parties (the "Agreement") was valid and enforceable.[1] Wife also challenged the circuit court's order awarding Husband attorney's fees in the amount of $22,752.50. This Court dismissed the appeal because a final judgment had not yet been entered in the parties' divorce case. *Pattison v. Pattison*, 254 Md. App. 294, 311 (2022) ("*Pattison I*").

In this appeal, which was noted after a Judgment of Absolute Divorce was entered, Wife presents the following questions for this Court's review, which we have rephrased slightly, as follows:

1. Did the circuit court err in granting Husband's motion to enforce the Agreement?

2. Did the circuit court err when it ordered Wife to pay attorney's fees to Husband?

3. Did conflicts of interest improperly influence the decisions of the circuit court or compromise the proceedings to the disadvantage of Wife?

For the reasons set forth below, we shall reverse the judgments of the circuit court.

---

[1] Wife contends that what is referred to in the opinion as the Agreement was merely an offer of settlement.

FACTUAL AND PROCEDURAL BACKGROUND

## I.

### Events Leading Up to the Agreement

In our earlier reported opinion, *Pattison I*, we set forth the factual background, as follows:

> Husband and Wife were married in Annapolis, Maryland on April 9, 2016. In April 2019, the parties separated. On May 24, 2019, Husband filed a Complaint for Absolute Divorce, alleging adultery. At that time, Husband was self-employed, and Wife was employed full time.
>
> On June 4, 2019, Wife filed a Counter-Claim for Absolute Divorce and other relief on the grounds of separation, constructive desertion, cruelty of conduct, and excessively vicious conduct. Thereafter, the parties filed multiple other pleadings, including amended and supplemental complaints. They engaged in extensive settlement negotiations.
>
> Husband testified that, by September 24, 2020, he expected a finalized settlement agreement to be signed by Wife and presented to him for his signature. On September 25, 2020, counsel for Wife sent an agreement, signed by her and dated September 25, 2020, to Husband's counsel. Husband signed the agreement three days later, on September 28, 2020. Husband also executed two other documents, a promissory note and an unconditional guaranty that support the payment of the monetary award under the agreement.

254 Md. App. at 289-99.

The Agreement, which stated that its effective date was September 25, 2020, addressed alimony, distribution of property, counsel fees, marital property, and all other matters arising from the marital relationship. It provided that both parties waived any claim for alimony or any right to the other party's pension and retirement assets. The parties agreed to sell the marital home and split the net proceeds. Wife would transfer her "right, title, and interest" in their investment property to Husband, and Husband would pay Wife $120,000.00, as well as reimburse Wife for her initial deposit of $180,000.00, plus interest

accrued. Wife waived any interest in Husband's business, and Wife would retain ownership of the rental property she owned in South Dakota. To balance the equities, Husband would pay Wife a monetary award of $760,000.00 in six installments, as well as make payments to Wife to resolve Wife's income tax liabilities. Husband agreed to execute a promissory note regarding the monetary award with a guarantee of payment by his business. Both parties would retain ownership of their personal property and automobiles.

The parties agreed that Husband would pay $65,000.00 to Wife for her attorney's fees and other legal expenses. The Agreement stated:

> In the event that either party claims a breach of the terms of this Agreement and suit is brought for any alleged breach and/or enforcement thereof, then in that event the prevailing party shall be reimbursed his/her legal expenses, including reasonable attorney's fees, expert's fees, and court costs by the other party.

The Agreement provided that it contained "the entire understanding of the parties, and neither of them shall be bound by any promises, representations, covenants, or warranties not contained herein."

## II.

### Controversy Following the Signing of the Agreement

Controversy ensued after Husband signed the Agreement. As we explained in *Pattison I*:

> On September 29, 2020, following the return of the signed agreement and other documents, Husband filed a Supplemental Complaint alleging that the parties had reached an agreement that resolved all issues of marital and non-marital property. He requested that the parties "be granted an Absolute divorce on the ground of Mutual Consent."

3

On October 12, 2020, Wife filed an answer to the supplemental complaint, denying that the parties had reached an agreement.[2] She stated that "she made a settlement offer to [Husband] on September 25, 2020[,] which was not timely accepted, and that the signed Marital Settlement Agreement is a nullity." Wife alleged that she delivered the agreement to Husband's counsel, along with a letter stating that the agreement was conditioned on Husband's execution of the agreement and promissory note on the same day, September 25, 2020.

On October 16, 2020, Husband filed a Motion to Enforce Marital Settlement Agreement (the "Motion to Enforce"). He stated that the agreement was "valid and enforceable," and Wife's position that the agreement was subject to a time condition was "frivolous, baseless, without merit, and [ ] filed in bad faith." Husband requested that the court enforce the agreement and order Wife to pay his legal fees in connection with the Motion to Enforce.

On February 19, 2021, Wife, represented by her new attorney, filed two pleadings: a Motion to Set Aside Marital Settlement Agreement (the "Motion to Set Aside") and a Response to Motion to Enforce Marital Settlement Agreement. Wife presented three arguments: (1) there was no binding agreement because Wife's offer to settle was conditioned on Husband's execution of the document on September 25, 2020, which did not occur; (2) even if there was a valid contract, it must be set aside because the terms were unconscionable; and (3) the agreement should be set aside because it was a result of fraud, coercion or undue influence.[]

Husband filed a Motion to Strike Wife's Response to his Motion to Enforce. He also filed a Motion for Attorney's Fees, requesting that the court order Wife to reimburse him for attorney's fees that he incurred in relation to enforcement of the agreement. On March 5, 2021, Wife filed a response, requesting that the court deny the Motion for Attorney's Fees.

On March 16, 2021, the court held a hearing on the motions, beginning with the Motion to Enforce. Husband's counsel began by discussing the lengthy settlement negotiations. He stated in an email sent at 3:51 p.m. on September 25, 2020 that counsel for Wife attached a settlement package, including a letter stating that the agreement was "conditioned" on Husband signing it. Counsel argued that the parties executed a valid settlement agreement, which was signed by both parties. He characterized the language of the letter as ambiguous, and it was not a clear, enforceable condition that the agreement must be accepted by a certain date, particularly when there was language that another document needed to be signed by

---

[2] On October 13, 2020, Wife's counsel filed a motion to strike his appearance on behalf of Wife, after giving Wife notice on October 1, 2020, of his intent to strike his appearance.

4

September 28, 2020. Counsel argued that, even if there was such a condition, it was an unreasonable or impermissible condition, given that counsel's office had limited personnel due to COVID and Husband was unable to sign that day.[]

In her opening statement, counsel for Wife argued that there was no agreement, and therefore, Husband could not be granted a divorce under the Third Supplemental Complaint, which alleged mutual consent. Counsel stated that the letter that was hand-delivered and emailed to Husband's counsel on September 25, 2020, stated: "This agreement is delivered to you in settlement of the parties' outstanding disputes on the condition that the agreement and note be executed by [Husband] today," with the word "today" underlined. Counsel argued that the guaranty could be signed on Monday, but it was clear that the agreement needed to be signed by Husband that day, which was not done, and therefore there was no contract.

Both Husband and Wife testified regarding the events leading up to the agreement and the agreement itself. During Husband's direct testimony, his counsel attempted to admit into evidence letters of settlement discussions between himself and Wife's former counsel. Wife's counsel objected on hearsay grounds, stating that Wife's former counsel was the author of the letters and would need to be present to testify to their contents. She further argued that the letters were irrelevant and inadmissible settlement discussions. Husband's counsel responded that the letters were relevant because they spoke to the formation of the agreement, and they supported Husband's alternative theory of the formation of an executory agreement. With respect to hearsay, counsel argued that there were no hearsay implications. The court sustained the objections to the admission of the letters on hearsay grounds.

Husband testified that, by September 22, 2020, several issues had been resolved during the settlement negotiations. He listed the terms to which the parties had agreed, as set forth in a draft agreement proposal exchanged on September 22. Those terms remained unchanged, and no counteroffer, revocation, or expiration date was communicated. On September 23, 2020, he received an updated agreement with revisions. He believed this included final terms of the divorce settlement, but there remained issues relating to the promissory note and guaranty that still needed to be negotiated. At that time, there was no indication of any condition to execution of the agreement.

Husband then testified regarding the executed agreement. He received an email containing the agreement on Friday, September 25, 2020. He knew that he did not get it before 5:00 p.m. because he had COVID at the time and slept from noon until 5:00 p.m. He did not sign an original of the document until he received it on September 28, 2020. The physical copy contained Wife's notarized signature. In addition to signing the agreement

on September 28, Husband also signed the promissory note and the guaranty. Husband stated that the agreement did not contain any deadline to execute the agreement, and at the time he signed it, he believed the document set forth the agreement reached by the parties, and he understood that he was bound by the agreement.

On cross-examination, Husband admitted that, on September 24, 2020, he was expecting an agreement, signed by Wife, to be presented to him for his signature. He also was aware, from emails sent on September 25, 2020, that Wife's counsel notified his counsel that a copy of the agreement signed by Wife, the promissory note and the guaranty would be delivered to Husband's counsel that day.

Husband testified that a letter was attached to the email from Wife's counsel on September 25. He agreed that the letter stated: "This agreement is delivered to you in settlement of the parties' outstanding disputes on condition that the agreement and the note be executed by [Husband] today." He stated, however, that he did not understand the letter to mean that there was a condition that he sign the agreement and promissory note on September 25. Rather, he believed that the letter meant that all the documents (the agreement, promissory note, and guaranty) needed to be executed by the following Monday, September 28. That understanding was based on the following sentence in the letter, which read: "Counsel will assume that [the parties] will have a final guaranty signed by [Husband] by close of business on Monday," September 28, 2020.

Finally, Husband testified regarding the significant attorney's fees he incurred in moving to enforce the agreement. Billing invoices admitted into evidence showed fees of $26,252.50. Counsel for Wife did not ask any questions about attorney's fees on recross-examination.

Wife testified that she signed the agreement at approximately noon on September 25, 2020, in her attorney's office. She instructed her attorney, consistent with the letter sent with the agreement delivered to Husband, that there was a condition that the agreement be signed on the same day. She read aloud the language of the letter, which said that the agreement was delivered "on condition that the agreement and the note be executed by [Husband] today." The court, however, sustained Husband's objection to the admission of the letter. Husband did not sign the agreement or the note on September 25, 2020. On cross-examination, Wife testified that the emails between her attorney and Husband's attorney show that both attorneys were in communication throughout the day on September 25, from 8:16 a.m. to 3:57 p.m.

In closing argument, Husband's counsel stated that any condition that formed the basis of Wife's argument was never properly communicated, and Husband did not interpret the language in the letter as a condition. Husband believed there was time, and it was anticipated that the documents would be

6

completed on Monday. Counsel for the parties were in communication the week leading up to the signing of the agreement, and at no point was a deadline communicated. Husband's counsel argued that this was a case of contract interpretation, and the court must look to the agreement itself to determine whether there was some term that went to withdrawal or revocation, and any document outside the agreement that purported to create a condition was parol evidence. Counsel argued that the parties had reached an agreement, Wife signed it, and that contract was validly executed, with "no valid condition placed on it."

Wife's counsel argued that the September 25 offer had a condition, which was not met, and therefore, there was no contract. She said that the agreement was only open that day, Husband did not accept it, and that was the "end of story, there's no agreement."

254 Md. App. at 299-303 (footnotes omitted).

## III.

## Ruling on the Motion to Enforce

On March 17, 2021, the court issued its ruling. It noted that Wife signed the agreement on September 25, 2020, and Husband signed it on September 28, 2020. The court found "that the unambiguous language in the [Agreement] showed mutual assent to be bound by its terms," and therefore, the court did not need to address Wife's argument that mutual assent did not occur because her offer was conditioned on Husband signing the Agreement on September 25.

The court stated, however, that it would make alternative findings and conclusions with respect to that claim. The court discussed the claim, as follows:

[Wife] indicates that her offer was conditional on [Husband] signing the separation agreement on September 25th, 2020, and points to language in an email sent by her attorney indicating such. However, [Husband] denies that [Wife] provided a hard deadline, and points to language by [Wife]'s attorney in the same email . . . indicating an expectation that the agreement would be finalized by the following week.

7

The court stated that, after consideration of the evidence and the credibility of the witnesses, it did not "find that [Wife's] offer included a definite time expiration of September 25th, 2020."

Alternatively, the court found that, even if the offer included a time expiration of September 25, "contract formation still would have occurred through the action of the parties." The court found that counsel were in communication throughout the day, and it stated that, at some point on September 25, Husband "indicated through counsel that he would not be able to sign the agreement until Monday, September 28." The court stated that there was no evidence that Wife rejected Husband's "offer to sign the agreement on Monday, the 28th, rather than Friday. In fact, the evidence indicates a willingness to accept the [Agreement] from [Husband] on Monday." The court noted that Wife did not raise the issue of untimeliness until she filed her answer to the amended complaint 17 days later, and it found that Wife's delay "in raising the issue of untimeliness constituted a waiver of the requirement to sign the Agreement on September 25, 2020."

The court cited to 2 WILLISTON ON CONTRACTS § 5:5 (4th ed.),[3] which provides as follows:

> Often an offeror who has imposed a time limit in its offer does not in fact insist upon it, and by further negotiations the offeror may indicate a continued willingness to stand by the terms of its offer. Any such manifestation of continued willingness on the part of the offeror will extend the time during which acceptance may occur, constituting in effect a new offer which may be accepted, and if so accepted, will ripen into a contract.

---

[3] Although the transcript says "[i]ndiscernable" when stating the citation, the quote is from 2 WILLISTON ON CONTRACTS § 5:5 (4th ed.).

The court stated that it was not persuaded that Wife was unwilling to extend the time for Husband to accept the offer after she learned that Husband was unable to sign the agreement on September 25. Accordingly, the court found that, when Husband signed the offer on September 28, the Agreement "ripened into a contract," and mutual consent of the parties to form a contract, had occurred.

As explained in *Pattison I*, the following occurred:

> The court advised that it was ready to hear the next motion. Wife's counsel stated that she was withdrawing the Motion to Set Aside, due to scheduling issues. The court then granted Husband's Motion to Enforce.
>
> Wife's counsel noted that, in light of the court's ruling granting the Motion to Enforce, she would file a notice of appeal. She asked that "any further court action be stayed pending the resolution" of the appeal. The court agreed not to go forward with the divorce proceeding while Wife pursued her options.
>
> The court indicated that there would not be a separate written decision because it read its ruling into the record. The civil hearing sheet reflecting the court's March 17, 2021 order granting the Motion to Enforce Agreement was entered in the docket entries on March 23, 2021.
>
> On March 19, 2021, Husband filed a Supplemental Motion for Attorney's Fees, requesting that the court order Wife to reimburse him $22,752.50 for litigating his Motion to Enforce. Counsel argued that Wife's position regarding the agreement was frivolous and made "in bad faith without substantial justification in the hopes of renegotiating the terms and extracting more from [Husband]."

254 Md. App. at 305-06.

## IV.

## Initial Appeal/Pattison I.

On April 7, 2021, Wife noted an appeal of the court's order granting the motion to enforce the Agreement. On May 6, 2021, Husband filed a Motion for Appropriate Relief,

9

asking the court to grant the Supplemental Motion For Attorney's Fees and order Wife to reimburse Husband for all legal fees and costs in the amount of $22,752.50.

On May 7, 2021, the court issued an order granting Husband's Motion for Attorney's Fees. It ordered Wife to pay Husband $22,752.50 in attorney's fees.

On May 20, 2021, Wife noted an appeal from the court's order awarding attorney's fees. This Court consolidated the two appeals. *See id*.

Wife subsequently filed a Motion to Stay Judgment, requesting a stay of the money judgment. The circuit court granted the motion and ordered Wife to "file Supersedeas Bond or Alterative Security pursuant to Rule 1-402 in the amount of $22,752.50 within 30 days." On October 4, 2021, Wife filed a line stating that she had paid $22,752.50 into the Registry Fund of the Circuit Court for Anne Arundel County.

On January 11, 2022, the parties presented Oral Argument to this Court. On March 31, 2022, this Court dismissed the appeal because a final judgment had not yet been entered in the parties' divorce case. *Id*. at 310-11.

## V.

### Subsequent Proceedings

On April 4, 2022, Husband filed a motion requesting an uncontested divorce hearing.[4] On April 8, 2022, Husband filed a Motion for Judgment to enforce the May 7, 2021 Order, contending that "the award of attorneys fees was entered nearly one (1) year

---

[4] Additional lawsuits generated by the prior proceedings included: Wife's defamation case against Husband; a lawsuit by Wife's former lawyer against Wife for his fees; Wife's countersuit against her former lawyer for professional negligence; and Husband's separate action against Wife for breach of contract.

ago, and the $22,752.50 [Wife] paid into the Registry Fund . . . is ripe to be reduced to a judgment." Wife responded to the Motion for Judgment, stating that it was premature because a final divorce had not yet been granted. On April 13, 2022, Wife filed an Opposition to the Motion for an Uncontested Divorce Hearing, arguing that a hearing was premature because this Court had yet to issue the Mandate. On April 22, 2022, Husband filed a Request to Withdraw Request for Uncontested Divorce Hearing.

On May 2, 2022, Husband filed a Second Motion to Enforce Marital Settlement Agreement and Request for Hearing ("Second Motion to Enforce"), asking the court to enforce the Agreement, order Wife to reimburse Husband for all legal fees and costs incurred in the case, and "[f]or such other and further relief as the nature of the cause requires." On September 21, 2022, the court denied the motion.

On May 3, 2022, this Court issued its Mandate in *Pattison I*.

On May 11, 2022, Wife filed a Fourth Amended and Supplemental Counter-Claim for Absolute Divorce, Breach of Contract, And Other Relief ("Fourth Counter-Claim"), "in an effort to obtain the final divorce." On May 26, 2022, Husband filed a Motion to Strike Wife's Fourth Counter-Claim. On September 21, 2022, the court denied Husband's Second Motion to Enforce.

On February 3, 2023, the circuit court held a motions hearing in the underlying divorce case. Both parties wanted a divorce, but they disagreed on the grounds. Husband argued that, pursuant to the Agreement, the court should grant a divorce based on mutual consent. Wife noted that, although the circuit court had found that the Agreement was enforceable, she planned to appeal that ruling when the divorce was final, and she wanted

11

a divorce based on the ground of a one-year separation. The court noted that the case was not set in for a divorce hearing, and it would hear the three motions set for the hearing: (1) Husband's Motion for Judgment with respect to the attorney's fees awarded; (2) Husband's Motion to Enforce Settlement Agreement; and (3) Husband's Motion to Strike Wife's Fourth Amended Counter Complaint for divorce.[5]

On March 9, 2023, the circuit court granted Husband's Motion for Judgment with respect to the attorney's fees ordered in May 2021, in the amount of $22,752.50. The court explained that the judgment should be entered because the court's ruling granted a stay of the attorney's fees award until this Court issued its mandate in *Pattison I*, which had occurred.

The circuit court granted Husband's Motion to Strike the Fourth Counterclaim, in part. The court also granted Husband's Second Motion to Enforce, in part, ordering Wife to abide by the Agreement and "immediately comply with the terms of Section 5.02 of the marital settlement agreement and transfer her right, title and interest in the property of the parties."[6] The court denied without prejudice Husband's request for additional monetary relief or attorney's fees, but it stated that Husband could later refile that request.

---

[5] Husband explained that he moved to strike this pleading because it restated all factual allegations and relief requests in the initial pleading in 2019, despite the existence of the Agreement, which provided that the divorce would be by mutual consent.

[6] Section 5.02 stated that Wife agreed to transfer all her rights in the investment property to Husband, and that Husband would hold harmless and indemnify Wife from any liability on that property.

On March 20, 2023, Wife filed a notice of appeal. On March 31, 2023, Wife filed a Motion to Stay the Judgment in the circuit court, which denied the motion. Wife then filed a Motion to Stay in this Court, which was granted, in part. Pending resolution of this appeal, the order was "stayed only as to the provision that the [Wife] transfer her interest in the parties' property at 699 Glendon Avenue, Annapolis, MD."

On May 9, 2023, the circuit court certified that Wife satisfied her judgment debt of $22,752.50 against her. That same day, the court conducted a pre-trial conference, where it set a time for an uncontested divorce hearing and ordered that the ground for divorce be "mutual consent where the Separation Agreement will be incorporated but not merged into the Judgment of Absolute Divorce."

## VI.

## Judgment of Absolute Divorce

On June 8, 2023, the circuit court held the divorce hearing. Husband testified that the Agreement included "all terms of marital, non-marital property, attorney's fees, monetary award, and things of that nature," and he asserted that the Agreement called for dismissal with prejudice of the defamation case Wife filed against him. Husband asked the Court to incorporate, but not merge, the Agreement into the Judgment of Absolute Divorce.

Wife testified that she believed that the Agreement was not enforceable, and she intended to appeal that ruling once the final judgment of divorce was entered. On June 16, 2023, the court entered a Judgment of Absolute Divorce, which granted an absolute divorce

based on mutual consent and ordered that the Agreement be "incorporated but not merged" into the judgment.

On June 19, 2023, Wife filed a notice of appeal of the judgment of divorce. This Court consolidated this appeal with the one filed on March 20, 2023.

**DISCUSSION**

**I.**

**Formation of Contract**

The first issue raised by Wife relates to the enforceability of the Agreement. "Settlement agreements are enforceable as independent contracts, subject to the same general rules of construction that apply to other contracts." *4900 Park Heights Ave. LLC v. Cromwell Retail 1, LLC*, 246 Md. App. 1, 18 (quoting *Erie Ins. Exch. v. Estate of Reeside*, 200 Md. App. 453, 460 (2011)), *cert. denied*, 469 Md. 655 (2020). When reviewing a ruling on a settlement agreement, "we review the circuit court's factual findings for clear error and its legal conclusions *de novo*." *Id*.

Although the parties on appeal do not agree on much, they purport to agree that "this case presents a simple contractual issue of offer and acceptance." They present different resolutions, however, of this "simple" issue.

Wife contends that the circuit court erred in granting Husband's Motion to Enforce the Agreement. She asserts that the Agreement was delivered to Husband's counsel with the condition that it be signed on September 25. She argues that the Agreement expired at the end of that day when the condition was not met, and therefore, there was no contract or final agreement. Wife contends that the condition was clear and unambiguous, and the

14

court was clearly erroneous in finding to the contrary. She also argues that the court was clearly erroneous in finding that she waived any conditions by failing to immediately raise the issue of untimeliness.

Husband contends that the Agreement is a valid and enforceable contract, asserting that both parties signed an unambiguous Agreement intending to end all litigation between them. Husband argues that Wife did not impose a proper condition to acceptance because: (1) Wife did not introduce into evidence the letter imposing the condition; (2) there was no evidence that a condition to accept the Agreement by September 25 was conveyed to him; and (3) even if a condition was imposed, it was not clear and unambiguous.[7]

## A.

### Acceptance Deadline as Condition Precedent to Contract

We begin with the principle that a person can make an offer to enter into a contract subject to a condition that the contract be executed by a stated time. If an offer "does not specify an expiration date, it expires on its own within a reasonable time." 1 CORBIN ON CONTRACTS § 2.14 (2023). The offeror, however, is "free to determine and impose whatever terms it might choose, . . . [including] that its offer be accepted within a designated time [and] in a specific manner." *American Medicinal Spirits Co. v. Mayor and City Council of Baltimore*, 165 Md. 128, 133 (1933). If the offer is not accepted within the designated time "fixed by the offer, the offer necessarily expires." *Id. Accord Century 21*

---

[7] Husband discusses in detail the timing and circumstances of the negotiations, which suggests an argument that this time condition was unreasonable under the circumstances. He subsequently acknowledges, however, that "it would have been a very simple process to communicate a legally binding acceptance on September 25, 2020."

*Pinetree Props., Inc. v. Cason*, 469 S.E.2d 458, 461 (Ga. Ct. App. 1996) (if the "contract requires that an offer be accepted within a stated time, no contract is formed when the offer is accepted after the stated time, unless the late acceptance became a counteroffer" that is accepted by initial offeror); *State v. Ernst & Young, L.L.P.*, 902 A.2d 338, 345 (N.J. 2006) (when an offeror specifies a timeframe within which an offeree must accept an offer, "[t]here is no question that an offeree must accept an offer within the time specified in the offer").

The circuit court appeared to find, however, that given the unambiguous language in the Agreement, it did not need to address Wife's argument that the failure to meet the time condition resulted in no contract being formed. We disagree with that analysis.

Before a court "can construe a contract, there must exist a contract." *Gordy v. Ocean Park, Inc.*, 218 Md. 52, 60 (1958). "[T]he making and delivering of a writing, no matter how complete a contract, according to its terms, is not a binding contract *if delivered upon a condition precedent* to its becoming obligatory." *Broderick Co. v. Colville*, 179 N.E. 810, 811 (Ohio Ct. App. 1931) (emphasis added). "In such case[, a contract] does not become operative as a contract until the performance and happening of the condition precedent." *Id.* "A condition precedent in a contract is 'a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises.'" *All State Home Mortg., Inc. v. Daniel*, 187 Md. App. 166, 182 (2009) (quoting *Chirichella v. Erwin*, 270 Md. 178, 182 (1973)).

Husband does not dispute that Wife could impose, as a condition precedent to the formation of the contract, the condition that a contract would be formed only if Husband

16

signed it by a specific time, i.e., by the end of the day Friday, September 25, 2020. Nor does he dispute that he did not sign the Agreement until September 28.

Husband argues, however, that there was not a valid condition precedent to formation of a contract in this case for several reasons. First, he argues that, because the condition asserted by Wife was made in a letter, and the letter was not admitted into evidence, there was no evidence establishing that there was a condition imposed that the Agreement be signed on September 25, 2020. The record belies that contention.

Husband is correct that the letter was not admitted into evidence. The contents of the letter, however, were read into evidence. Husband in his testimony agreed that the letter stated: "This agreement is delivered to you in settlement of the parties' outstanding disputes on condition that the agreement and the note be executed by [Husband] today." Although Husband now argues that he did not see the letter on September 25, 2020, Husband never made that assertion below. Indeed, counsel for Husband acknowledged in his opening statement in the circuit court that the letter was included in an email from Wife's counsel on September 25, 2020, which contained the "Pattison settlement package." Under these circumstances, the contention that Husband did not see the letter on September 25 is not preserved for appellate review. *See* Md. Rule 8-131(a) (courts ordinarily "will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court"); *King v. State*, 434 Md. 472, 479 (2013) (issue not raised below is not preserved for appellate review).

In any event, even if preserved, we would conclude that the contention is without merit. Husband testified that he saw the letter imposing the time condition, but he stated

17

that he did not understand it to impose a condition that he sign the Agreement that day.[8] The circuit court proceeded on the assumption, based on the evidence, that the letter was sent on September 25, 2020.

Husband next argues that the condition precedent to the formation of a binding contract was not effective because the time condition was not contained in the Agreement, and it was given only in a separate letter. He cites no authority, however, to support that position.[9]

Although we have not found a reported Maryland case addressing this specific issue, the Supreme Court of Maryland has stated that, "[w]here several instruments are made a part of a single transaction they will all be read and construed together as evidencing the intention of the parties in regard to the single transaction." *Rocks v. Brosius*, 241 Md. 612, 637 (1966). It appears to be a settled rule of contract interpretation that,

> in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction[,] will be considered and construed together, since they are, in the eyes of the law, one contract or instrument.

---

[8] Wife also testified to an email, which was not admitted into evidence, from her counsel to Husband's counsel, stating that the letter was attached to the email.

[9] At oral argument, counsel asserted that the following language from the Restatement (Second) of Contracts § 36(2) stood for the proposition that Wife could not impose a condition in a letter separate from the Agreement: "[A]n offeree's power of acceptance is terminated by the non-occurrence of any condition of acceptance under the terms of the offer." That language merely provides that a condition precedent must be satisfied before a binding contract is formed. It does not address whether that condition precedent can be set forth in a letter accompanying the proposed contract.

*Gilchrst Tractor Co. v. Stribling*, 192 So.2d 409, 417 (Miss. 1966) (quoting 17 Am. Jur. 2d Contracts § 264 (1964)). *Accord* Restatement (Second) of Contracts § 202(2) ("all writings that are part of the same transaction are interpreted together").

Here, we address these principles in the context of a letter sent with a proposed contract. The letter, which contained a condition precedent to the formation of a contract, was sent at the same time, in the same email, as the Agreement, and it was not contrary to any other writing.[10] Under these circumstances, the letter including the condition precedent that the Agreement be signed by September 25 was part of the offer. *See Edelman Arts, Inc., v. Art Int'l (UK) Ltd.*, 841 F. Supp. 2d 810, 823 (S.D.N.Y. 2012) (cover letters and cover faxes sent with a proposed contract constitute part of the contract as a matter of law). *See also, PMC, Inc. v. Porthole Yachts, Ltd.*, 65 Cal. App. 4th 882, 888 (1998) (cover letter attached to revised agreement permissible method to express conditional nature of acceptance). Husband's contention that the condition precedent to the formation of a binding contract was not valid because it was contained in a letter accompanying the Agreement is without merit.

Husband finally contends that, even if the letter properly imposed a time condition, the condition was not clear and unambiguous. He initially asserts that there was "no explanation of what 'today' meant." Moreover, he asserts that, given that the documents

---

[10] The Agreement did contain an integration clause, which provided: "This Agreement contains the entire understanding of the parties, and neither of them shall be bound by any promises, representations, covenants, or warranties not contained herein." The letter, which included a condition precedent to the formation of a contract, was not inconsistent with this provision.

19

were not sent to his counsel until 3:51 p.m. on September 25, 2020, and that the next sentence after the time condition[11] was: "I will assume that we will have the initial Guaranty signed by Mr. Pattison by close of business day Monday," he thought that all the documents needed to be signed by Monday, September 28.

The question whether the terms of a contract (or the terms of an offer) are ambiguous typically is a question of law. *Calomiris v. Woods*, 353 Md. 425, 434 (1999). A contract is "ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning." *Id.* at 436. A contract is not ambiguous, however, "merely because two parties, in litigation, offer different interpretations of its language." *Huggins v. Huggins & Harrison, Inc.*, 220 Md. App. 405, 419 (2014). If the language is unambiguous, the court must "give effect to its plain meaning and [] not contemplate what the parties may have subjectively intended by certain terms." *Cochran v. Norkunas*, 398 Md. 1, 16 (2007).

Here, the letter stated that the Agreement was delivered in settlement of the parties' disputes "*on condition* that the Agreement and Note be executed by [Husband] today," with the assumption that the parties would have a "final guaranty signed by [Husband] by close of business on Monday." The plain language of this letter was unambiguous and clearly indicated that Wife was including a condition precedent to a binding contract, i.e., that Husband sign the Agreement and the Note that day, Friday, September 25. Accordingly, we conclude that a reasonable person would have understood the letter to mean that the Agreement was conditioned on it being signed by the end of the day Friday, September 25.

---

[11] As indicated, the letter stated, "that the Agreement and Note be executed by Mr. Pattison today."

20

Husband did not meet that condition, which typically would mean that no contract was formed between the parties.

## B.

## Waiver

The circuit court found that, even if there initially was a condition precedent that the Agreement had to be signed on September 25, Wife, by her conduct, waived that condition. It stated that Husband's counsel indicated on September 25 that Husband would not be able to sign the Agreement until September 28, and there was no evidence that Wife rejected the offer to sign on September 28. Based on this factual finding, the court concluded that the evidence indicated Wife's "willingness to accept" the Agreement on September 28, and Wife waived the requirement that Husband sign the Agreement on September 25.

Wife contends that the court erred in finding that she waived the condition precedent that the Agreement be signed on September 25. Husband does not take a position on this issue. Although he states in the Statement of Facts section of his brief that Wife did not communicate that he failed to meet the deadline for conditional acceptance of the Agreement, Husband does not present any argument on appeal in support of the circuit court's finding that Wife waived the condition. Instead, he relies solely on the argument that there was no valid condition. Because waiver was a basis for the court's conclusion, however, we will address it.

As discussed, a contract generally is not formed if an offer is conditioned on acceptance within a stated time and the offer is accepted after that time. *See, e.g.*, *American Medicinal Spirits Co.*, 165 Md. at 133. We agree with the circuit court that there is an

21

exception to this general rule in the situation where the offeror waives strict compliance with the time condition. *See Century 21 Pinetree Props., Inc.*, 469 S.E.2d at 461 (if the "contract requires that an offer be accepted within a stated time, no contract is formed when the offer is accepted after the stated time, unless the late acceptance became a counteroffer [that] was then accepted by the original offeror"); *Ritchie v. Cordray*, 461 N.E. 2d 325, 328 (Ohio Ct. App. 1983) (where an offeror prescribes the time or manner of acceptance, "those terms must be strictly complied with by the offeree," although strict compliance can be waived by the offeror); *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (recognizing offer prescribing time and manner of acceptance "must ordinarily be complied with to create a contract," but a different method of acceptance may be effectual where offeror agrees to modification of terms of acceptance); *Nadeau v. Beers*, 440 P.2d 164, 166 (Wash. 1968) (when an agreement makes time of the essence, fixes a termination date, and there is no conduct giving rise to estoppel or waiver, the agreement became void upon the stated termination date because performance was not tendered). We disagree, however, with the circuit court's finding that Wife waived the time condition here.

Waiver typically is "a question of fact to be decided by the trier of fact." *See Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Centre at Parole, LLC,* 421 Md. 94, 122 (2011) (quoting *University Nat'l Bank v. Wolfe,* 279 Md. 512, 523 (1977)). *Accord Creveling v. Gov't Emps. Ins. Co.*, 376 Md. 72, 96 (2003); *Patriot Constr., LLC v. VK Elec. Servs., LLC*, 257 Md. App. 245, 261 (2023). When, however, a trier of fact could not find a waiver based on the circumstances, the issue can be decided as a matter of law. *See Myers v. Kayhoe*, 391 Md. 188, 207 (2006) (upholding grant of summary judgment because

22

no rational trier of fact could find a waiver under the facts). *Accord Hovnanian*, 421 Md. at 129 (waiver ruling occasionally can be made as a matter of law); *Allstate Ins. Co. v. Reliance Ins. Co.*, 141 Md. App. 506, 515 (2001) (waiver may be ruled on as a matter of law).

Here, the court found as a fact that, "[a]t some point on the 25th[,] [Husband] indicated through counsel that he would not be able to sign the agreement until Monday." It then found that there was "no evidence presented to indicate that [Wife] rejected [Husband's] offer to sign the [A]greement on Monday, the 28th, rather than Friday," and instead, "the evidence indicates a willingness to accept the separation from [Husband] on Monday." We have reviewed the evidence presented and found no evidence to support the court's findings in this regard.

Husband did not testify that his counsel conveyed to Wife's counsel that he was unable to sign the Agreement until Monday, and counsel did not testify. Counsel for Husband did say in opening statement that he had indicated to Wife's counsel that he was not in the office that afternoon, and he did not know if anyone else was in the office to get the physical Agreement that was being delivered. That, however, is not the same thing as saying that the Agreement could not be signed on September 25, particularly since the Agreement also was emailed to counsel.[12] Thus, the court was clearly erroneous in its factual finding that Wife waived the condition for Husband to sign the Agreement by September 25 based on a failure to reply to a non-existent communication that the

---

[12] Counsel also said in opening statement that someone did end up being in the office when the documents were hand delivered at 3:51 p.m. on September 25, 2020.

Agreement could not be signed until September 28. *See Spencer v. State*, 450 Md. 530, 548 (2016) (factual finding is clearly erroneous if there is no competent and material evidence in the record to support it). Thus, we look to the law on waiver and the facts presented to determine whether to remand for further factual findings by the circuit court or whether we can decide the issue as a matter of law.

"Waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances." *Hovnanian,* 421 Md. at 122 (quoting *Food Fair Stores, Inc. v. Blumberg,* 234 Md. 521, 531 (1964)). *Accord Allstate Ins. Co.*, 141 Md. App. at 513. "We look to the totality of a party's actions when determining whether waiver, or modification of the contract, has occurred." *Hovnanian*, 421 Md. at 122. *Accord Patriot Constr. LLC*, 257 Md. App. at 261. "A waiver of a contractual provision must be clearly established and will not be inferred from equivocal acts or language." *Woznicki v. GEICO Gen. Ins. Co.*, 443 Md. 93, 119 (2015) (quoting *Myers,* 391 Md. at 205).

As indicated, a waiver can be express or inferred. *See Hovnanian*, 421 Md. at 122. There has been no contention here of an express waiver by Wife of the condition to sign by September 25. Moreover, our review of the evidence indicates that there also was no conduct indicating an intent to waive the condition.

"For implied waiver to be found through a party's conduct, intent must be clearly demonstrated by the surrounding facts and circumstances." *WTG Gas Processing, L.P. v. ConocoPhillips Co.*, 309 S.W.3d 635, 648 (Tex. App. 2010); *see Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 353 (Tex. 2005) ("conduct must be unequivocally inconsistent

24

with claiming a known right"). "There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right." *WTG Gas Processing*, 309 S.W.3d at 648 (quoting *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003)).

Here, there was no such conduct. To be sure, Wife did not immediately tell Husband that, due to his failure to satisfy the condition precedent and sign the Agreement by the end of the day on September 25, there was no valid Agreement between them. She did not advise Husband of her position on this until she filed her Answer to Third Supplemental Complaint for Divorce - Mutual Consent, 17 days after Husband signed the Agreement. Wife's mere silence during this period of time, however, did not constitute a waiver of the condition precedent of the formation of a contract. *See Kennan v. Missouri State Mut. Ins. Co.*, 12 Iowa 126, 137 (1861) (if a contract requires that a condition precedent shall be performed, and it is not performed, "the failure of the party to request more, or object to the sufficiency, is but silence, and mere silence is not a waiver"); *Clemmons v. Nationwide Mut. Ins. Co.*, 148 S.E.2d 640, 647 (N.C. 1966) (where the insured advised her insurance company that she was being sued, the insurer's silence and failure to direct the insured how to comply with a condition precedent to her policy was insufficient evidence to support a finding that the insurance company knowingly and intentionally waived its rights).

As explained in 13 WILLISTON ON CONTRACTS, § 39:35 (4th ed.),

Mere silence, acquiescence, or inactivity is insufficient to show a waiver of contract rights when there is no duty to speak or act.[] But silence or inaction, coupled with knowledge by the party charged with a waiver that the contract's terms have not been strictly met, and detrimental reliance by the

25

other,[] for such a length of time as to manifest an intention to relinquish the known right, may result in a waiver of rights under the contract.

Courts have held that, if the delay in raising the failure to comply with a condition is excessive, the delay may constitute a waiver. *See American Hardware Mut. Ins. Co. v. BIM, Inc.*, 885 F.2d 132, 141 (4th Cir. 1989) (an insurance company's "prolonged silence constituted a violation of [its] duty [to speak]," thereby waiving insured's failure to satisfy a "condition precedent" in its insurance binder coverage); *C-B Realty & Trading Corp. v. Chicago & N. W. Ry. Co.*, 682 N.E.2d 1136, 1142-43 (Ill. App. Ct. 1997) (owner waived the right to strict performance of a water-tight provision of a contract with regard to a bridge when, for 30 years, despite occasional leaks, owner never complained about the sufficiency of the water-tightness of the bridge, and the owner knew from beginning that the bridge did not have a water-tight floor). *See also Carmine v. Bowen*, 104 Md. 198, 206 (1906) (landlord estopped from restraining tenant from removing crops when he was silent in response to tenant's statement that he was planting crops and intended to harvest them).[13]

Here, however, there was not an excessive delay before Wife advised that the failure to comply with the condition precedent to sign by September 25 resulted in no contract between the parties. Wife explained her position that the parties had not entered into a binding Agreement when she filed her initial Answer to Husband's Supplemental Complaint 17 days after the contract expired. This was not an undue delay, and a rational trier of fact could not conclude that this constituted a waiver of Wife's right to insist that

---

[13] We note that the trial court did not find, and Husband did not argue on appeal, that principles of estoppel or detrimental reliance by Husband precluded Wife from relying on the condition precedent to the formation of a contract.

there was no contract because there was a failure to satisfy the condition precedent to contract formation.

Accordingly, because Wife imposed a condition precedent to the formation of a contract, and that condition was not performed within the time required, or excused by Wife, a valid contract was not formed between the parties. *See* 5 WILLISTON ON CONTRACTS § 38:7 (4th ed.) ("A condition precedent in a contract . . . must be performed or happen before a duty of immediate performance arises on the promise which the condition qualifies."); *CHG Intern., Inc. v. Robin Lee, Inc.*, 667 P.2d. 1127, 1129 (Wash. Ct. App. 1983) ("Since the condition precedent to the contract was neither performed nor excused within the time required, both parties' contractual duties were discharged."). The circuit court erred in granting the motion to enforce the Agreement, and we reverse that ruling.[14]

## II.

## Attorney's Fees

Wife contends that the circuit court erred and abused its discretion when it ordered her to pay attorney's fees to Husband. She argues that the court failed to consider the requisite statutory requirements under Md. Code Ann., Fam. Law ("FL") § 7-107(c) and failed to articulate the basis for awarding fees.

---

[14] Wife asks this Court to not only reverse the circuit court's order granting the motion to enforce the Agreement, but also to reverse the Judgment of Absolute Divorce based on mutual consent. We recognize that further proceedings likely will be required regarding the division of assets, and perhaps, the grounds for divorce, but we decline to reverse the Judgment of Absolute Divorce, leaving the proper resolution of further proceedings to the circuit court based on any requests by the parties.

Husband contends that the circuit court properly exercised its discretion in awarding him attorney's fees. He argues that he provided evidence on the amount of fees incurred, and the court properly ordered fees based on the language of the Agreement.

## A.

### Proceedings Below

On October 16, 2020, Husband filed his Motion to Enforce the Agreement. On November 4, 2020, he filed a Motion for Appropriate Relief, asking the court to rule on his motion and order wife to reimburse him his legal fees. On February 19, 2021, Husband filed a Motion for Attorney's Fees – Enforcement of Settlement Agreement, requesting that the court enforce the Agreement and order Wife to pay his legal fees in connection with the Motion to Enforce. That same day, Wife responded, arguing that "there was no binding agreement because Wife's offer to settle was conditioned on Husband's execution of the document on September 25, 2020, which did not occur."

On March 16, 2021, the court held a hearing on the motions. Counsel for Husband asserted that he and Wife's counsel had negotiated the attorney's fees portion of the Agreement and determined that Husband would pay $65,000 in attorney's fees and $50,000 toward legal expert fees to Wife. Counsel further asserted that Husband had incurred significant attorney's fees to enforce the Agreement, and billing invoices that showed fees of $26,252.50 were admitted into evidence.

The following day, March 17, 2021, the court granted Husband's Motion to Enforce. Counsel for Wife advised that she would be filing an appeal on that ruling and further court action was stayed pending resolution of that action.

28

On March 19, 2021, Husband filed a Supplemental Motion for Attorney's Fees, requesting that the court order Wife to reimburse him $22,752.50 for litigating his Motion to Enforce. Counsel argued that Wife's position regarding the Agreement was frivolous and made "in bad faith without substantial justification in the hopes of renegotiating the terms and extracting more from [Husband]."

Wife subsequently noted an appeal of the court's order granting the motion to enforce the Agreement. On May 6, 2021, Husband filed a motion asking the court to grant the Supplemental Motion For Attorney's Fees and order Wife to reimburse Husband for all legal fees and costs in the amount of $22,752.50. On May 7, 2021, the court granted Husband's motion and ordered Wife to pay Husband $22,752.50 in attorney's fees.

On March 9, 2023, after extensive additional motions, some of which were discussed in *Pattison I*, the court ordered that "the amount of $22,752.50 is reduced to a judgment against [Wife] in favor of [Husband] with post-judgment interest at the legal rate." On March 31, 2023, Wife filed a Motion to Stay Judgment, which the court denied. On May 9, 2023, the court issued a Certificate of Satisfaction of Money Judgment, stating that Wife had satisfied the judgment entered against her in favor of Husband for $22,752.50 plus interest.

**B.**

**Analysis**

A circuit court's decision to award attorney's fees generally is reviewed under an abuse of discretion standard. *See Petrini v. Petrini*, 336 Md. 453, 468 (1994). "When the case permits attorney's fees to be awarded, they must be reasonable, taking into account

29

such factors as labor, skill, time, and benefit afforded to the client, as well as the financial resources and needs of each party." *Id.* at 467. *Accord Collins v. Collins*, 144 Md. App. 395, 449 (2002) ("The reasonableness of the attorney's fees must be analyzed once evidence is presented in favor of attorney's fees."). The court's order granting attorney's fees here did not explicitly explain the reasoning for the award. It did note, however, that it had reviewed the Agreement.

Section 17.03 of the parties' Agreement states:

In the event that either party claims a breach of the terms of the agreement and suit is brought for any alleged breach and/or enforcement thereof, then in that event the prevailing party shall be reimbursed his/her legal expenses, including reasonable attorney's fees, expert fees, and court costs by the other party.

Because we construe the court's award of attorney's fees to be based on its finding that Wife breached the Agreement, and given our conclusion that there was no breach because no contract had been formed, we reverse the order that Wife pay Husband's attorney's fees. Any further issues regarding attorney's fees can be addressed by the circuit court if raised by the parties.

## III.

## Conflicts of Interest

Wife contends that "the trial court was improperly influenced, and the proceedings were compromised by conflicts of interest" that infected the entire circuit court. Husband contends that there is not "even a shred" of evidence to support this contention.

Based on our resolution of the other issues, and our reversal of the circuit court rulings, we need not address this contention. If Wife believes that she cannot get a fair trial in Anne Arundel County, she can seek a change of venue.[15]

**JUDGMENTS OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED. COSTS TO BE PAID BY APPELLANT.**

---

[15] We note that, on March 6, 2020, Husband filed a Motion to Change Venue, and Wife opposed the motion.